# CASES DETERMINED

## August Term, 1893.

---

HURD, Respondent, vs. DOTY, Appellant.

*September 6 — September 26, 1893.*

*Life insurance: Insurable interest: Agreement to receive insurance money in trust: Enforcement: Illegality.*

A cousin of plaintiff's wife, who lived much of the time in plaintiff's family, procured insurance upon her own life, payable in part to him. Afterwards a question arose as to whether plaintiff, not being a blood relation, could be named as a beneficiary, and it was agreed between the assured, plaintiff, and defendant (an aunt of the assured) that defendant should be named as beneficiary but should receive the insurance moneys in trust and pay a part thereof to plaintiff. Plaintiff thereupon surrendered the insurance certificate, which had been delivered to him, and a new certificate was procured according to the agreement. After the death of the assured, the insurance moneys were paid to defendant, but she refused to pay any part thereof to plaintiff. *Held*, that whether plaintiff had an insurable interest in the life of the assured or not, defendant was bound to pay over to him the money according to the agreement.

APPEAL from the Circuit Court for *Dane* County.

On January 27, 1885, one Fannie E. Nash received from the Northwestern Mutual Relief Association of Madison a certificate of membership for insurance in an amount not exceeding $4,000, with one half payable to E. E. Doty, and the remainder equally divided between the plaintiff and C. C. Chittenden as beneficiaries. On March 29, 1889, the

said Fannie E. signed an application for change of bene-
ficiary in said insurance, so as to make $2,000 thereof pay-
able to the plaintiff, and the balance thereof to be equally
divided between E. E. Doty and C. C. Chittenden, and
therein and thereby returned and surrendered said former
certificate of insurance.   Thereupon, and on July 19, 1890,
the said company issued to said Fannie E. a new certificate
for insurance, not exceeding $4,000, of which sum $2,000
was payable to the plaintiff, and the remainder to be
equally divided between E. E. Doty and C. C. Chittenden,
and they to pay all her just debts and expenses of last sick-
ness and funeral.  The plaintiff held said certificate for
said Fannie E. until it was surrendered as hereinafter men-
tioned.   Said Fannie E. was a cousin by birth of the
plaintiff's wife, and a second cousin of his son.   She was
an inmate of the plaintiff's family, and had a home there
for some time during the latter years of her life.

On November 19, 1891, at the home of the defendant,
the said Fannie E. and the plaintiff met the defendant, and
the question arose between them whether said plaintiff and
the said E. E. Doty, who is the husband of the defendant,
not being blood relations of the said Fannie E., were en-
titled to be named as beneficiaries in the said policy; and
thereupon, and in order to carry out the wishes of the said
Fannie E., it was then and there mutually agreed by and
between this plaintiff and the defendant and the said Fan-
nie E. that the benefit certificate in the nature of a life in-
surance policy then existing in said company should be
changed, and that C. C. Chittenden should be a beneficiary
in such certificate for $100 only, and that the defendant,
*Amanda M. Doty*, who was an aunt and blood relation of
the said Fannie E., should be named as beneficiary for the
remainder of $4,000, namely, for the sum of $3,900, but on
the trust, promise, and agreement of said defendant that
she would accept said trust and accept the fund so to

come to her as such beneficiary, and from and out of the same at once hand over and deliver to the plaintiff the sum of $1,950, which the said Fannie E. then and there determined and directed should be paid to the plaintiff. During said negotiations the said Fannie E. proposed that the plaintiff's wife should be named in said certificate as beneficiary, but in trust, in fact, for the said sum of $1,950, which the said Fannie E. then and there determined and fixed upon as the amount to be paid to the plaintiff of said insurance money; but the defendant interfered and urged the said Fannie E. to have the certificate made to her as beneficiary for the said sum of $3,900, at the same time assuring the said Fannie E. that she could safely trust her (the defendant) to perform the trust and pay over to the plaintiff the sum of $1,950 to be received on said certificate; and said Fannie E. and the plaintiff relied on said assurance and agreement of said defendant, and were thereby led to dismiss the suggestion of having the wife of the plaintiff or some other person named as beneficiary in behalf of the plaintiff for said sum of $1,950.

Up to that time, November 19, 1891, the plaintiff had possession of the then outstanding policy of insurance, and at the request of the said Fannie E. was holding the same for safe-keeping. Relying upon the promise and agreement of the said defendant, and confiding therein, and in pursuance of the said agreement, he thereupon delivered the said policy or certificate of insurance to the said company, and the secretary of the said company thereupon made out a blank application for a change of beneficiary, wherein the outstanding certificate was surrendered and the said association directed to issue and forward to the said Fannie E. a new certificate for the same amount of insurance, in which $1,950 should be payable to this plaintiff, and $100 to said C. C. Chittenden, and the balance to the said E. E. Doty, who was therein to pay all her just

debts and all her funeral expenses. Upon the back of such filled-up blank application the said Fannie E. made and signed the following instrument or writing, to wit: "Burke, Wis., Nov. 24, 1891. Mr. Parkinson [the secretary of the company]: I think this should be changed to read just a little different, like this: *R. W. Hurd,* $1,950, and he to pay all expenses to present date; C. C. Chittenden, $100; E. E. Doty, the remaining $1,950, and expenses from this date. Please make this change and oblige FANNIE E. NASH." Thereupon the manager of such company wrote a letter to the said Fannie E., bearing date November 24, 1891, saying in effect· "Your note to Mr. Parkinson relative to the change in the wording of your application for a change of beneficiaries, has been referred to me. Replying, I have to say that the statutes under which the association is incorporated declare that its object is to provide for the families of its members and their kindred. 'Kindred,' as we understand it, means 'blood relation.' We had supposed that the beneficiaries named in your certificate were in accordance with our rules and the statutes of the state; but I have to-day, for the first time, learned that *R. W. Hurd* does not sustain a relationship to you that would entitle him to be one of your beneficiaries. You will therefore please name such persons for beneficiaries as will be legally entitled to claim insurance in the event of your death, in compliance with the law above quoted in this regard, and oblige." "P. S. The same objection made to *R. W. Hurd* applies to E. E. Doty, but in the case of the latter you can substitute your aunt, Mrs. Doty, as beneficiary." To that letter the said Fannie E. replied, under date of November 25, 1891, to the effect: "Please make out new policy at once leaving C. C. Chittenden $100, and *Mrs. A. M. Doty* [defendant] the remaining $3,900, and oblige."

On the same day the said Fannie wrote to the plaintiff a letter in these words: "Uncle was in town yesterday and

took the policy [application] you sent out to Mr. Briggs. That worthy objects. Uncle [the defendant's husband] will show you his letter to me, so I have it all made out to aunty [the defendant] but the $100 to C. C. C., *but she agrees to make it all right, as agreed upon between you the other night.* Have not been as well the last two or three days. Come out on the train and see me. You see by the old policy you would have lost it all. Please let uncle [the defendant's husband] take the old policy, so as to have this finished up."

On November 25, 1891, the said Fannie E. signed a blank application for change of beneficiary, filled out by the secretary of the company, whereby she requested the company to "issue and forward to me a new certificate, payable to my relative C. C. Chittenden, $100, and to my aunt *Mrs. Amanda M. Doty* the sum of $3,900;" whereupon, and on the same day, the company, by its president and secretary, made a new certificate of insurance for not to exceed $4,000, of which $100 was payable to her "relative C. C. Chittenden," and $3,900 to "her aunt *Mrs. Amanda M. Doty.*"

The said Fannie E. Nash died December 17, 1891, in Dane county. Thereupon, and on May 21, 1892, at Madison, the said company paid said $100 to said Chittenden, and $3,900 thereof to the said defendant. The plaintiff thereupon duly demanded of the defendant that she should deliver to the plaintiff the said $1,950 so received and held by her in trust for him, but she refused to pay over or deliver to him the same or any part thereof, and denied said trust.

On October 7, 1892, the plaintiff served and filed this bill in equity to have the defendant declared and adjudged a trustee, holding said sum of $1,950 so received by her in trust for the plaintiff. To that complaint, defendant put in an answer taking issue with the allegations of the com-

plaint, and upon the trial the court found the facts in effect as stated, and also found, as conclusions of law, that the defendant holds said $1,950 in trust for the plaintiff, and that said agreement and trust were valid and binding upon the defendant; that her neglect and refusal to pay over to the plaintiff said sum of $1,950 was wrongful and in fraud of the plaintiff and the trust under which the defendant received that fund; that the plaintiff was entitled to judgment herein, and to recover of and from the defendant the sum of $1,950, together with interest since the same was received by her, to wit, May 21, 1892, in the sum of $91, together with costs herein to be taxed. · From the judgment entered accordingly the defendant appeals.

For the appellant there was a brief by *Lewis & Briggs* and *John D. Gurnee,* and oral argument by *H. M. Lewis.* They contended, *inter alia,* that plaintiff had no insurable interest in the life of Fannie E. Nash. 2 May, Ins. (3d ed.), sec. 590; *Ruse v. Mut. Ben. L. Ins. Co.* 23 N. Y. 516; Angell, Ins. sec. 296; 2 Parke, Ins. (7th ed.), 639; Bacon, Ben. Soc. sec. 250; *Lewis v. Phœnix M. L. Ins. Co.* 39 Conn. 100; *Am. Legion of Honor v. Perry,* 140 Mass. 580; *Guardian M. L. Ins. Co. v. Hogan,* 80 Ill. 35; *Elsey v. Relief Asso.* 142 Mass. 224; *Continental L. Ins. Co. v. Volger,* 89 Ind. 572; *Singleton v. St. Louis Mut. L. Ins. Co.* 66 Mo. 63; *Appeal of Corson,* 113 Pa. St. 438; *Gilbert v. Moose's Adm'r,* 104 id. 74; *Rombach v. Piedmont Ins. Co.* 35 La. Ann. 233; *Mich. Mut. Ben. Asso. v. Rolfe,* 76 Mich. 146; *Silvers v. Mich. Mut. Ben. Asso.* 94 id. 39. Plaintiff could not be a beneficiary in a certificate issued by the Northwestern Mutual Relief Association, organized under sec. 1771, R. S. Bouvier, Law Dict. KINDRED; Wood, Inst. 50; 2 Bl. Comm. 253; *State ex rel. Att'y Gen. v. People's M. B. Asso.* 42 Ohio St. 579; *State ex rel. Att'y Gen. v. Standard L. I. Asso.* 38 id. 281; *Nat. M. A. Asso. v. Gonser,* 43 id. 1; *Am. Legion of Honor v. Perry,* 140 Mass. 580; *Supreme Lodge v. Nairn,* 60 Mich.

Hurd vs. Doty.

44. See *Kentucky M. Ins. Co. v. Miller's Adm'r*, 13 Bush (Ky.), 489; *State v. Cent. M. R. Asso.* 29 Ohio St. 399; *Mut. B. Asso. v. McAuley*, 2 Mackey (D. C.), 70; *McClure v. Johnson*, 56 Iowa, 620; *Greeno v. Greeno*, 23 Hun, 478; *Mut. B. Asso. v. Hoyt*, 46 Mich. 473; *Mich. M. B. Asso. v. Rolfe*, 76 id. 146; *People v. Golden Rule Co.* 114 Ill. 34, 35; *Golden Rule v. People*, 118 id. 499; *Rockhold v. Canton M. B. Asso.* 129 id. 440; *Palmer v. Welch*, 132 id. 141. The secret agreement claimed to have been made was unlawful, and plaintiff cannot recover thereon. 1 Lewin, Trusts, top p. 182, ch. 2; Brett's L. C. in Eq. *6, note 15; Bispham, Eq. (4th ed.), sec. 56; Tiff. & B. Trusts, 124; Perry, Trusts (4th ed.), secs. 63, 65; *Muckleston v. Brown*, 6 Ves. 52, 67; *Strickland v. Aldridge*, 9 id. 516; *Russell v. Jackson*, 10 Hare, 204; *Chamberlain v. Agar*, 2 Ves. & B. 259; *Podmore v. Gunning*, 7 Sim. 644. This suit is in the nature of an action for specific performance, and in order to establish his right to a recovery plaintiff is obliged to plead and prove the illegal agreement. *Melchoir v. McCarty*, 31 Wis. 255; *Clarke v. Lincoln L. Co.* 59 id. 655; *Chippewa Valley & S. R. Co. v. C., St. P., M. & O. R. Co.* 75 id. 224; *Gilmore v. Roberts*, 79 id. 453; *Marshal v. Railroad Co.* 16 How. 314; *Bank v. Owen*, 2 Pet. 539; Pomeroy, Spec. Perf. 284–6; *Wight v. Rindskopf*, 43 Wis. 344; *Guernsey v. Cook*, 120 Mass. 501; *Setter v. Alvey*, 15 Kan. 157; *Creath v. Sims*, 5 How. 204; *Bestor v. Wathen*, 60 Ill. 138; *Snell v. Dwight*, 120 Mass. 9; *Watson v. Murray*, 23 N. J. Eq. 257; *Green v. Carrigan*, 87 Mo. 359; *Gould v. Kendall*, 15 Neb. 549; *Sykes v. Beadon*, 11 Ch. Div. 196.

For the respondent there was a brief by *Burr W. Jones* and *F. J. & C. F. Lamb*, and oral argument by *Mr. F. J. Lamb* and *Mr. Jones*. They argued, among other things, that on the language of sec. 1771, R. S., plaintiff could have recovered on the certificate of July 19, 1890, had Miss Nash died before it was surrendered. The statute is to be liberally construed to further the object for which the cor-

Hurd vs. Doty.

poration is organized, the choice of means being left to the corporation. *Mygatt v. N. Y. P. Ins. Co.* 21 N. Y. 53–55; *Rockhold v. Canton M. B. Asso.* 129 Ill. 440, 445; *Maneely v. Knights,* 115 Pa. St. 305. Plaintiff might be held to be of the "family" of Miss Nash. *Carmichael v. N. W. Mut. B. Asso.* 51 Mich. 494; *McCarthy v. N. E. Order of P.* 153 Mass. 314; *Poor v. Hudson Ins. Co.* 2 Fed. Rep. 432; Anderson, Law Dict. FAMILY; *Merritt v. Baldwin,* 6 Wis. 439, 446. The certificate of July 19, 1890, was issued in exact conformity with the articles of the association, and the association would be estopped from disputing its liability thereon. 2 Morawetz, Corp. 689; *Bradley v. Ballard,* 55 Ill. 415; *Darst v. Gale,* 83 id. 136; Bacon, Ben. Soc. sec. 265; Niblack, Ben. Soc. sec. 7; *Matt v. Roman Cath. M. P. Soc.* 70 Iowa, 455; *Knights of Honor v. Watson,* 64 N. H. 517; *Baker v. Gee,* 1 Wall. 333, 337; *Germantown Ins. Co. v. Dhein,* 43 Wis. 420. The money having been voluntarily paid to defendant, she could not set up the illegality of the original trust and thus retain the property. 1 Pomeroy, Eq. Jur. sec. 403, note 2; *Thomson v. Thomson,* 7 Ves. 470; *Tenant v. Elliott,* 1 Bos. & P. 3; *Farmer v. Russell,* id. 296; *Sharp v. Taylor,* 2 Phil. 801; *Joy v. Campbell,* 1 Sch. & Lef. 338–9; *McBlair v. Gibbes,* 17 How. 232; *Brooks v. Martin,* 2 Wall. 81; *Worthington v. Curtiss,* L. R. 1 Ch. Div. 419, 423–4; *Heckman v. Swartz,* 50 Wis. 267, 270. The objection that plaintiff had not an insurable interest in the life of Miss Nash does not apply because she procured the insurance at her own expense. *Bloomington M. L. B. Asso. v. Blue,* 120 Ill. 121, and cases cited; Bacon, Ben. Soc. sec. 249; 11 Am. & Eng. Ency. of Law, 318; 1 May, Ins. sec. 112.

CASSODAY, J. The findings of the court are fully sustained by the evidence.

It is contended that the plaintiff had no insurable interest in the life of Fannie E. Nash. The learned counsel for the

defendant cites numerous cases to the effect that one pro-
curing insurance upon the life of another cannot recover
upon the policy without proving an interest in the life as-
sured.   The theory upon which such decisions are based is
that such a contract is nothing more than a wagering or
gambling contract, and hence is against public policy, and
is therefore void.   It is very questionable whether such a
policy was void by the common law of England prior to
1774.   *Lucena v. Craufurd,* 3 Bos. & P. 75; *Cousins v.
Nantes,* 3 Taunt. 513; *Dalby v. India & L. L. Ass. Co.* (15
Com. B.) 80 Eng. C. L. 365.   In the year named, the stat-
ute of 14 Geo. III. c. 48, was enacted, and is to the effect
that thereafter "no insurance shall be made by any person
or persons, bodies politic or corporate, on the life or lives
of any person or persons, or on any other event or events
whatsoever, wherein the person or persons for whose use,
benefit, or on whose account such policy or policies shall be
made shall have no interest, or by way of gambling or
wagering; and that every assurance made contrary to the
true intent and meaning hereof shall be null and void to all
intents and purposes whatsoever."   12 Eng. Stats. at Large,
90.   The preamble to the act speaks of it as a remedy for
an existing mischief.   The act is general in its terms, and
does not purport to extend to any English colony, and it
was held as late as 1832 that it did not extend to Ireland.
*Shannon v. Nugent,* Hayes, 536; *British Ins. Co. v. Magee,*
Cooke & A. 182.   In *Spaulding v. C. & N. W. R. Co.* 30
Wis. 117, 118, it was held, in an opinion by Dixon, C. J.,
that the statute of 14 Geo. III. c. 78, passed the same year
and about the same time, was never in force in Wisconsin,
for the reason that its passage was so near the Revolution
that it was never received and acted upon as a part of the
common law in this country.   But cases are cited by coun-
sel from courts of high authority holding that the act of 14
Geo. III. c. 48, was merely confirmatory of the common law

as it previously existed in England, while others assume that the common law was and is as therein embodied, without making any reference to the act. So, some of the cases cited seem to have gone so far as to hold that if a creditor, having an insurable interest in the life of his ·debtor, obtains an insurance thereon in his own favor, and the debt is subsequently paid or extinguished during the life of the assured, or the policy is assigned to one having no insurable interest in the debtor's life, such policy cannot be enforced against the company. But this court has held that a policy of life insurance obtained in good faith by a person having an insurable interest in the life assured may be assigned to *any person* with the consent of the company; that an assignment by a son of insurance policies on his own life, as security for a debt due from his father to the assignee, is valid. *Bursinger v. Bank*, 67 Wis. 75, and cases there cited by Mr. Justice TAYLOR. The same principle seems to be sanctioned in England, notwithstanding the statute quoted. It has there been held that, " where a policy effected by a creditor on the life of his debtor is valid at the time it is entered into, the circumstance of the interest of the assured in such life ceasing before the death does not invalidate it by reason of the provisions of the 14 Geo. III. c. 48." *Dalby v. India & L. L. Ass. Co.* (15 Com. B.) 80 Eng. C. L. 365. This is put upon the theory that a contract of life insurance is not a contract of indemnity, but is a mere contract to pay a certain sum of money upon the death of a person, in consideration of the due payment of certain annual premiums during his life. That case has been repeatedly cited with apparent approval by the English courts. *Knox v. Turner*, L. R. 9 Eq. 163; *Rankin v. Potter*, L. R. 6 H. L. 119; *Bradburn v. G. W. R. Co.* L. R. 10 Exch. 2; *Burnand v. Rodocanachi*, L. R. 7 App. Cas. 340. See, also, *Morrell v. Trenton M. L. Ins. Co.* 10 Cush. 282, 57 Am. Dec. 92.

Hurd vs. Doty.

But in the case at bar the plaintiff did not, as a creditor or otherwise, procure the insurance in question. On the contrary, the same was procured by Fannie E. Nash upon her own life, payable as indicated. The contention is that the company had no lawful authority to insure her life, directly or indirectly, for the benefit of the plaintiff, and hence that, in so far as she attempted to do so in the name of the defendant as trustee, the policy is *pro tanto* void. The statute authorized the formation of a corporation in the manner therein provided, to promote the several objects therein named, and, among others, "for the *mutual support of the members, their families or* kindred in cases of sickness, misfortune, poverty, or death, or for any lawful business or purpose whatever, except," as therein specifically named. Sec. 1771, R. S. The by-laws of the association provided that " the object and business of the association shall be to *furnish pecuniary relief to its members when disabled by sickness or accident,* and to provide a mortuary benefit for the *burial of its members and relief of their families or* kindred." It is undisputed that Miss Nash was an invalid for six or seven years immediately prior to her death; that during that time she lived and made her home for most of the time with the plaintiff and as a member of his family; that while she was there one of her limbs was amputated, and she was much of the time under the care of a physician; that she was a blood relative of the plaintiff's wife and their son, as mentioned in the foregoing statement; that from January 27, 1885, to December 17, 1891, her life was insured in this same company; that during the fore part of this time, and for about four years, one fourth of the amount of the insurance was expressly payable to the plaintiff; that during the most of the balance of the time about one half of the amount was expressly payable to the plaintiff; that the last change in the form of the policy, making $3,900 of the amount payable to the defend-

ant upon her agreement to receive and hold the same in trust, and from the amount so received pay over to the plaintiff $1,950, as found by the court, was merely to obviate a supposed legal objection to the form of the policy. In all these transactions the manifest purpose of Miss Nash was to secure for herself a home, maintenance, and support in the family of the plaintiff, and to remunerate him for the same by way of such insurance. It was certainly a very appropriate way, if not the only way, in which she as a member of the order could, in the language of the statute, " receive the mutual support of the (other) members," or could be furnished with pecuniary relief by the other members. Neither the statute nor the by-laws limit the beneficiaries to blood relatives.

In *Barnes v. London, E. & L. L. Ins. Co.* [1892] 1 Q. B. 864, an action was brought to recover the amount of a policy of insurance upon the life of a child ten years old, a step-sister of the plaintiff, and it appeared that the plaintiff had promised the mother of the child to take care of and help maintain it; and it was "held that the plaintiff had an insurable interest in the child's life, and was entitled, in the absence of any objections as to the amount in fact expended by her, to recover the amount of the policy." Lord COLE-RIDGE, C. J., in effect said that it appeared that the plaintiff had undertaken the burden of keeping and maintaining the child. That " that was a duty not cast upon her by law, but was wholly self-imposed. . . . In that state of circumstances it is said that the plaintiff had no insurable interest in the child's life. Now, I agree that the insurable interest must be a pecuniary interest, and that the interest must be in existence at the time when the policy is effected. That is perfectly clear upon the authorities. Is there such a pecuniary insurable interest here? I think there is. . . . I cannot find that anything has been said in any case to a contrary effect." And in one of the cases cited by counsel

for the defendant, Mr. Justice FIELD, speaking for the whole court, said: "It is not very easy to define with precision what will in all cases constitute an insurable interest, so as to take the contract out of the class of wager policies. It may be stated generally, however, to be such an interest, arising from the relations of the party obtaining the insurance, either as creditor of or surety for the assured, or from the ties of blood or marriage to him, as will justify a reasonable expectation of advantage or benefit from the continuance of his life. It is not necessary that the expectation of advantage or benefit should be always capable of pecuniary estimation. . . . But in all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either *pecuniary*, or of blood or *affinity*, to expect some benefit or advantage from the continuance of the life of the assured." *Warnock v. Davis*, 104 U. S. 779.

But, as indicated, the case at bar is more favorable to the validity of the insurance, since Miss Nash procured the insurance on her own life, in part to remunerate and compensate one to whom she was under great moral, if not legal, obligations. Upon her death the company promptly paid the money to the defendant, as agreed in the policy. It is, at least, very doubtful whether the company could have successfully resisted such payment, had it made the attempt; but that question is not before us for determination. Even assuming that the company might have successfully resisted such payment, yet we are clearly of the opinion that in voluntarily making the payment the company violated no statute nor any principle of the common law or of good morals. The defendant, therefore, came into the lawful possession of the money. As indicated in the foregoing statement, the plaintiff surrendered the previous outstanding certificate, and he and Miss Nash consented and agreed that a new certificate should be taken

out in the name of the defendant; but this was done only upon the express agreement of the defendant that she would receive $1,950 of the amount in trust for the plaintiff, and pay the same over to him. By virtue of the agreement so made by the defendant, Miss Nash, and the plaintiff, the defendant has since received the money. The precise question for determination, therefore, is whether the defendant can retain that money for her own use, in violation of that agreement. We are clearly of the opinion that she cannot. *Kiewert v. Rindskopf*, 46 Wis. 481; *Heckman, v. Swartz*, 50 Wis. 267; *Wells v. McGeoch*, 71 Wis. 196; *Remington v. Ward*, 78 Wis. 539; *Gilmore v. Roberts*, 79 Wis. 450. These cases have repeatedly affirmed the proposition that if A. receives money from B. for the purpose of paying it to C. upon an agreement between them, he cannot retain the money so received on the ground that the agreement between B. and C. was illegal.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 21 L. R. A. 746.— REP.