# Naftel v. County of Montgomery.

*Action against County for Services of a Physician rendered in Coroner's Inquest.*

1. *Claims against county; what are chargeable.*—No claims are chargeable on a county treasury, or can be paid therefrom, except such as the law imposes upon the county or empowers it to contract; and no officer of the county can charge it with the payment of other claims, however meritorious the consideration or whatever may be the benefit the county may derive and enjoy from them.

2. *Same; services of physician rendered in coroner's inquest.* Under the statute, (Code, § 4936), only one fee is allowed a physician or surgeon for attending a coroner's inquest, and giving his professional opinion after an autopsy and microscopic examination on the dead body, however much labor or skill it may have required, and this fee, which, under the statute is five dollars, and one dollar additional for each mile the physician may have traveled in attending the inquest, must be collected out of the estate of the deceased, if solvent, and is to be paid by the county treasurer only in the event the estate of the decedent is insolvent.

APPEAL from the City Court of Montgomery.

Tried before the Hon. A. D. SAYRE.

This action was brought by the appellant, J. H. Naftel against the County of Montgomery; and counted upon an account for work and labor done in performing an autopsy and making a microscopical examination on the body of Kate Cahalan. Upon issue joined upon the plea of the general issue, the cause was tried upon an agreed statement of facts, without the intervention of a jury. This agreed statement sets forth the following

facts: Kate Cahalan suddenly died in August, 1896, within the county of Montgomery, and State of Alabama, under such circumstances as to give reasonable grounds to the coroner of Montgomery county to believe that she had come to her death by being choked or by the use of other foul means. The said coroner thereupon duly summoned a coroner's jury and held an inquest over the body of the said Kate Cahalan, and called before him and such jury, J. H. Naftel, the plaintiff, who was a practicing physician and surgeon. Plaintiff by direction of said coroner made an examination of the body of the deceased in the presence of said jury, and stated in the presence of said jury that he could not give a professional opinion as to the cause of said death of the said Kate Cahalan without holding an autopsy or post mortem examination over the body. Thereupon he was directed to hold such post mortem examination and to make a microscopic examination of the organs of the deceased, which were reasonably necessary to be made in order to determine whether or not death resulted from foul means. Pursuant to such directions from the coroner, plaintiff did perform an autopsy and make a microscopic examination of the organs of deceased, and was engaged in and about the same for one day and a part of another. The reasonable value of such service in making such autopsy and miscroscopic examination was fifty dollars. After the same had been made, plaintiff appeared before said coroner and coroner's jury and testified and reported the result of his autopsy and microscopical examination and gave a professional opinion upon the cause of death of the deceased. Prior to the bringing of this suit the claim of plaintiff against defendant for the said sum of fifty dollars was duly presented to and filed with the Board of Revenue of Montgomery County, and wholly disallowed by them, and their disallowance of the same duly entered of record. The estate of said Kate Cahalan was administered on and was insolvent. Plaintiff was paid by the administrator of the estate of said Kate Cahalan, deceased, five dollars, and no more, and has received no other

[Naftel v. County of Montgomery.]

compensation or allowance either from said administrator or from any other source.

Upon these facts the court rendered judgment in favor of the defendant, and to the rendition of this judgment the plaintiff duly excepted. The plaintiff appeals, and assigns as error the rendition of judgment in favor of the defendant.

WATTS, TROY & CAFFEY, for appellant.—The office of coroner is an ancient one at common law, whose duties are regulated and prescribed by the common law, except as modified by statute.—7 Am. & Eng. Encyc. (2d ed.), 598-9; 4 Am. & Eng. Encyc. (1st ed.), 171; 1 Blackstone Com. 348; 2 Hawkins, P. C., Ch. 9, § 19; Bacon's Abridgment, "Coroner." He was a *county* officer at common law, and is such under our Constitution and statutes.—Authorities *supra;* Constitution, VII, § 3; Code, p. 88; Code, § 1073. See also Code, §§ 4926, 4936. His duties are for the most part judicial, and among them is the investigation of extraordinary deaths.

The extent of power of the coroner as to summoning a surgeon or physician conferred by the statute is as a *witness,* and the duty imposed by section 4926 upon such physician so summoned as a witness is to inspect the body in the presence of the jury and give a professional opinion as to the cause of death. The compensation fixed by section 4936 at five dollars is, by the express words of the statute for the examination of the body and giving the professional opinion thereon, which, by section 4926, the physician may be required as a witness to make and give. Hence, it must follow that the compensation fixed by section 4936 has no reference to other services performed than those mentioned in the two sections, 4926 and 4936.

At common law as it prevails in Alabama, because not modified by our statutes, a coroner has authority as a judicial officer to summon a physician to perform services in making an inquest, outside of acting as a witness, and to bind the county to pay such physician for such work and labor done a reasonable compensation. *Gaston v. Marion County,* 3 Ind. 497; *Alleghany v.*

*Watts*, 3 Barr. 462; *Alleghany v. Shaw*, 34 Pa. St. 301; *Jamison v. Commissioners,* 64 Ind. 524; *Rutherford v. Harris*, 3 Texas App. 114; *St. Francis County v. Cummings*, 55 Ark. 419. See also *Pickett v. Erie County*, 19 W. N. C. Pa. 60; 3 Pa. Co. Ct. Rep. 23; *Northampton v. Innes*, 26 Penn. St. 156; *Sherman v. Supervisors,* 30 How. Prac. 173.

The exact question in the case at bar has never been decided in Alabama, but the principle involved has been adopted by our court.—*Montgomery v. Barber*, 45 Ala. 237; *Selma v. Mollen,* 46 Ala. 411.

JOHN G. FINLEY, *contra.*—The coroner is a county officer and is elected by the qualified voters every four years.—Code, § 1073. The duties of the coroner are particularly prescribed in sections 1075 to 1084 of the Civil Code, and by sections 4924 and 4937 of the Criminal Code.

The statutes prescribe the duty of the coroner as to summoning of physicians in the matter of inquest, regulate their fees and mileage, direct how they shall be paid and fixes the amount of the same. The statute gives the power to the coroner to summon a physician only as a witness and not otherwise. It would be exceedingly dangerous to the financial interest of a county if the coroner had the power to summon a physician and the physician the right to fix his fee for services rendered at an inquest. Witnesses in all criminal cases are inadequately paid for their attendance, but every man owes something to the State for its protection. The law has fixed the price for which a man shall serve as a juror or as a witness and in many instances they have to suffer great loss in doing so. The law of fees and costs must be held to be penal and no fee must be demanded or received except in cases authorized by law.—Code, § 1353. The county can only be charged with such expenses and liabilities as are authorized by law. *Van Epps v. Commissioners,* 25 Ala. 460; *Mitchell v. Tallapoosa*, 30 Ala. 130; *Barbour v. Benson*, 36 Ala. 362; *Barbour v. Horn*, 48 Ala. 649; *Posey v. Mobile,* 50 Ala.

6; *Simpson v. Lauderdale;* 56 Ala.: 64; *Bengin v. Hawkins,* 101 Ala. 326; *Jack v. Moore;* 66 Ala: 187.

HARALSON, J.—1. Whatever may have been the liability of counties at common law, and whatever may be their liability in the different States of the Union, under different statutes, the policy long adopted in this State has been and is, to remove them from any liability on any account, except as may be allowed by statute. The weight of authority, as this court has heretofore said, is opposed to subjecting them to common law liabilities.—*Barbour County v. Horn,* 48 Ala. 657.

In *Van Eppes v. The Commissioners,* 25 Ala. 460,—suit against the county for the hire of carriages, under the direction of the judge of the circuit court, to convey the grand jurors to the county jail for the purpose of inspecting it,—it was said: "The county can be charged only with such expenses as are authorized by law; and unless there is some statute, which authorized the judge of the circuit court to direct the sheriff to provide carriages to convey the grand jurors to the jail, for the purpose of inspecting it, the expense thus incurred cannot be collected out of the county." Where there is no law which creates the liability, it cannot be enforced against the county.—*Mitchell v. Tallapoosa County,* 30 Ala. 131. The county is only liable for a debt the law enables it to contract, and which it has actually contracted.—*Barbour County v. Clark,* 50 Ala. 418; *Posey v. Mobile County,* 50 Ala. 6. "No claims are chargeable on the county treasury, nor can be paid therefrom, except such as the law imposes on the county, or empowers it to contract. No officer of the county can charge it with the payment of other claims, however meritorious the consideration, or whatever may be the benefit the county may derive and enjoy from them." *Jack v. Moore,* 66 Ala. 187.

These adjudications are full and clear on the principle, that the counties in this State, acting through their officers and agents, do not have unlimited authority in creating debts, but in their creation they are restrained by, and must act within the power conferred,

or such as is necessarily incident thereto. If anything further were needed in this case, it will be found in the act establishing the Board of Revenue of Montgomery County, (Acts, 1874-75, p. 513), in the third section of which act it is provided that said board shall have "the sole right and authority to bind the county of Montgomery on any contract for the payment of money."

Section 4924 of the Code authorizes the coroner of the county under the conditions and in the manner therein directed, to hold an inquest over the body of a person who has been killed, or suddenly died under such circumstances as afford a reasonable ground for believing that such death has been occasioned by the act of another by unlawful means.

Section 4926 provides for the subpœnaing of witnesses when an inquest is held, and among them, a physician or surgeon, who must in the presence of the jury, inspect the body, and give a professional opinion as to the cause of death. Any witness thus subpœnaed, who refuses to answer, is guilty of a misdemeanor.—Code, § 4928. The physician or surgeon is allowed, as a witness, five dollars, with one dollar additional for each mile he may have travelled in attending such inquest, to be collected out of the estate of the deceased, if solvent, and if insolvent, to be paid out of the county treasury.—Code, § 4936. This section is found under the head of "Inquests," and must be construed in connection with section 4573, found under the head of "Fees of Coroners." Both sections make reference to the fees to be allowed to physicians or surgeons for examining the body of the deceased. The latter section (4573), appears in the Code of 1886, as section 4876, and the former (4936), as section 4813; but in the rearrangement of the Code of 1896, the first appears ahead of the latter as section 4573, and the other afterwards, as section 4936. With such explanation, one understands why section 4573 appropriately refers to section 4936, apparently later, and why the provisions of the last section are referred to as a part of the first named. Said section 4573, in Art. 6, Ch. 141, concerning "Fees of Coroners," is headed *"Fees for inquest, how taxed and*

*paid; post mortem examinations and fees therefor; other fees."* Inquests, on which the fees herein prescribed are based, are provided to be held in the after appearing Art. 7, Ch. 162, commencing with section 4924. Section 4573, as to these fees, provides: "Fees for holding inquest shall be paid out of the county treasury, when, in the opinion of the court of county commissioners or board of revenue, the inquest should have been held. * * * But no fees shall be paid for an inquest when it is publicly known before the jury is summoned, what caused the death of the deceased, or when the slayer has been arrested for the homicide; but in such case, if the immediate cause of the death is uncertain, a physician or surgeon may be summoned to made a post mortem examination, who shall give his opinion in writing as to the cause of the death, which must be returned by the coroner as inquests are returned by him, and such coroner, physician, or surgeon, shall be entitled to the same fee and mileage, to be paid in the same manner, as for attending an inquest," etc. The coroner's fees are prescribed by section 4572, but the fee of the physician or surgeon is not prescribed in said chapter relating to fees of coroners, etc., and is found alone in said section 4936,—sections 4572 and 4573 having been adopted with reference thereto. It is thus made clear, that each of said sections relate to the same subject-matter, and are to be construed together. But one fee is allowed the physician or surgeon for attending an inquest and giving his professional opinion after examining the dead body, however much labor or skill it may have required, and the fee therefor is specifically prescribed. If it be said, that this allowance is inadequate, a full answer to the suggestion is, that the legislature has prescribed this and no other fee for such services. It often occurs in rendering services to the State and county, that the citizen is inadequately compensated in money, notably in the cases of jurors and witnesses, whose fees, as allowed by law, in many instances. fall short of their actual expenses, to say nothing of the value of their time, their trouble and losses in business. Their compensation comes mainly from

the services they render the county in the interest of
law, order and good government; and so does the phy-
sician's or surgeon's, when he bestows his skill in the
duties required of him in holding inquests; in the inter-
est of the discovery of unlawful homicides and the pun-
ishment of the perpetrators of them. The plaintiff as
appears, received the fee allowed him by law, and was
entitled to no more.

On the agreed statement of facts, the court below,
trying the cause thereon, very properly rendered a
judgment for defendant.

Affirmed.