**BICE, County Treasurer, v. FOSHEE.**

**(5 Div. 446.)**

(Court of Appeals of Alabama. Oct. 30, 1923.)

1. Counties ⬤⟲124(2)—County may be liable on implied contract within its contractual powers, and ratification of unauthorized contract may be implied.

The county may be liable on an implied contract within its contractual powers, and ratification of an unauthorized, if legally permissible, contract may be implied.

2. Counties ⬤⟲23—Acts of boards exercising legislative jurisdiction not controllable by a court, in the absence of fraud.

Where boards of revenue and like bodies exercise legislative jurisdiction, and such action is within the express or implied terms of the act granting the power to them, their acts will not be controlled by a court, in the absence of fraud.

3. Counties ⬤⟲113(6)—Implied power of county board to employ agents required for county purposes stated.

Though county boards, in the absence of legal authority to do so, cannot employ agencies to exercise powers beyond those granted them, nor contract with a person to perform acts which are part of the official duties imposed on other county or state officers, they have implied power to employ such agents and servants as may be required for county purposes and which are not otherwise provided for by statute or the Constitution.

---

⬤⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Counties** ☞**113(6)—Employment of guard to protect dipping vats held within implied power of county board; "maintained."**

If, in the opinion of a county board, a guard was necessary to maintain and protect from depredation certain dipping vats, ·which vats, by Acts 1915, p. 341, § 1, the board was charged with the duty of maintaining, the employment of a guard ·was within the implied powers of the board, and services rendered by such guard at the request of the sheriff of the county could be ratified by the board; "maintain" meaning to bear the expense of, to support and keep up.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Maintain.]

Bricken, P. J., dissenting.

Appeal from Circuit Court, Chilton County; B. K. McMorris, Judge.

Motion by J. W. Foshee for summary judgment against J. Bice, as Treasurer of Chilton County. From a judgment for movant, respondent ,appeals. Affirmed.

Reynolds & Reynolds, of Clanton, for appellant.

The county can be charged only with such expenses as are authorized by law, and unless there is some statute so authorizing the expenditure ·the county is not liable. Van Eppes v. Comm. Court, 25 Ala. 460; Mitchell v. Tallapoosa Co., 30 Ala. 131; Naftel v. Montgomery Co., 127 Ala. 563, 29 South. 29; Comm. Court v. Moore, 53 Ala. 25.

, J. B. Atkinson, of Clanton, for appellee.

The commissioners' court had authority to make appropriation for maintenance of dipping vats, and appellee's claim should have. been paid by the treasurer. Acts 1915, p. 341, § 1.

SAMFORD, J. (for the majority). Some of the dipping vats in Chilton county provided for by acts of the Legislature, approved September 2, 1915 (Acts 1915, p. 341), being in danger of destruction by dynamite in the hands of unknown parties, the appellee, under the direction of the sheriff of the county guarded one of such vats for a certain period of time. After the services had been rendered, appellee filed his claim for compensation with the commissioners' court. The amount of such claim being agreed upon as reasonable for the services so rendered, the commissioners drew a warrant for the amount in favor of appellee, directed to the county treasurer. All of the foregoing was regular on its face. The treasurer of the county ·declined to pay the warrant upon the ground that the warrant was issued in a case not allowed by law. The trial court, on a summary motion, rendered judgment for appellee, and the treasurer appeals. There are no disputed facts.

[1] A county may be liable on an implied contract within its contractural powers. And ratification of an unauthorized—if legally permissible—contract may be implied. This rule is laid down in 11 Cyc. 478D, and approved in Montgomery Co. v. Pruett, 175 Ala. 391, 57 South. 823, in which last case is cited Naftel v. County of Montgomery, 127 Ala. 563, 29 South. 29; Scarbrough v. Watson, 140 Ala. 351, 37 South. 281.

[2] It would seem, therefore, that the only question of real moment in this case is whether the power to "maintain" dipping vats as contained in section 1 of the act of the Legislature, approved September 2, 1915 (Acts 1915, p. 341), is broad enough to authorize the county ·board of commissioners to contract to pay guards, for the purpose of protecting dipping vats, which the county was charged with maintaining. Under section 1 of the act, ·supra, the board is—

"authorized and empowered to make appropriations for the purpose of constructing and maintaining dipping vats to be used," etc.

Where boards of revenue and like bodies exercise legislative jurisdiction, and such action is within the express or implied terms of the act granting the power to them, and there is an absence of "fraud, corruption, or unfair dealing," their acts will not be controlled by any judicial tribunal. Henry, Treasurer, v. Rogers, ante, p. 376, 97 South. 427.

Maintain means to bear the expenses of, to support, keep up. Judson v. Blanchard, 4 Conn. 566; Rhodes v. Mummery, 48 Ind. 216. One of the definitions given in Webster's International Dictionary is: "Not to suffer to cease or fail." Under a statute vesting boards of revenue with general supervision of roads and bridges, our Supreme Court held that the board was authorized to purchase and maintain an automobile for use in maintaining and inspecting the roads and bridges of the county. Ensley Motor Co. v. O'Rear, 196 Ala. 481, 71 South. 704. This court has held that under a statute giving to the board of revenue general superintendence of roads and bridges with power to construct, maintain, and improve roads, bridges, etc., the board had authority to appropriate money out of the road fund to pay certain expenses incurred by the board in determining the best character of road and the best material to be used. Henry, etc., v. Rogers (Ala. App.) 97 South. 427.[1] Under a statute authorizing the board to provide and equip a public morgue, it was held that the board was authorized to employ a morgue keeper. Manley v. Scott, 108 Minn. 142, 121 N. W. 628, 29 L. R. A. (N. S.) 652. Under a statute authorizing the maintenance of county officers, the appointment of a custodian was held to be valid. Conway v. New York, 6 Daly (N. Y.) 515. Under similar statutes contracts for the employment of

the following have been upheld: A janitor for a courthouse (Hetsch v. Com., 86 Ky. 327, 5 S. W. 781), guards for a county jail (Mitchell v. Leavenworth Co., 18 Kan. 188).

[3] County boards, in the absence of legal authority to do so, cannot employ agencies to exercise powers beyond the powers granted them by law. Neither is it within the power of a county board to contract with a person to perform acts which are part of the official duties imposed by law on other officers of the county or state. Where employment for particular services is expressly and fully covered by statute, the board has no power to exceed such authority.

"With these limitations county boards have implied power to employ such agents and servants as may be required for county purposes and which are not otherwise provided by statute or the state Constitution." 15 C. J. 546, par. 238.

[4] The county board is charged, in the instant case, with maintaining certain dipping vats. If to maintain these a guard was, in its opinion, necessary to protect such vats from depredation, the employment of such guard was within the implied powers of the board and being so the services rendered at the request of the sheriff of the county could be ratified by the board.

There is no error in the record, and the judgment of the circuit court is affirmed.

Affirmed.

FOSTER, J. (concurring). Section 2 of the Act of 1919, p. 30, requires boards of county commissioners to "provide or install or build in their respective counties the necessary number of concrete dipping vats," etc.

The dipping vats were the property of Chilton county. Section 130 of the Code of 1907 provides that "the court of county commissioners have control of all property belonging to the county." The authority to control carries with it the power to protect county property. The board of county commissioners may protect the county courthouse against threatened destruction. Said boards may protect the county jail and the county almshouse against threatened destruction; likewise they may protect dipping vats or any property belonging to the county against threatened destruction, and if reasonably necessary may employ guards for such purpose, and may pay a reasonable charge for such service.

In the instant case the dipping vats were the property of Chilton county; the sheriff employed guards to protect the vats from threatened destruction; the board found that this was reasonably necessary, and that the charge therefor was reasonable.

I am of the opinion that the judgment of the lower court should be affirmed, upon the ground that the property (the dipping vats) belonged to the county, that the boards of county commissioners are charged with control of county property which carries the authority to protect such property, and that said boards may appropriate money for the purpose of protecting from threatened destruction any property belonging to the county, when it appears to such boards that such expenditures are reasonably necessary and the charge is reasonable.

BRICKEN, P. J. (dissenting). This case is made by the record in this: Some dipping vats in Chilton county were in danger of destruction by dynamite at the hands of unknown parties. The appellee, at the request of the sheriff of the county, guarded a vat for a period of time. Subsequently appellee went before the commissioners' court and asked compensation. The amount of his compensation was agreed upon and the parties agreed that the sum agreed upon was reasonable for the services rendered. The commissioners drew a warrant for the agreed sum, which was presented to the county treasurer and payment declined; the treasurer taking the position that there was no statute authorizing the county to compensate appellee under the circumstances stated. The lower court decided in favor of the appellee, and the county treasurer brings the case here for review.

The county can be charged only with such expenses as are authorized by law, and unless there is a statute authorizing the expense it cannot be recovered out of the county. Van Epps v. Commissioners' Court, 25 Ala. 460. Naftel v. County of Montgomery, 127 Ala. 563, 29 South. 29; Walker v. Bridgeforth, Treas., 9 Ala. App. 257, 62 South. 323; Weakley v. Henry, 204 Ala. 463, 86 South. 46.

No claims are chargeable on the county treasury, nor can be paid therefrom, except such as the law imposes on the county, or empowers it to contract. No officer of the county can charge it with the payment of other claims, however meritorious the consideration, or whatever may be the benefit the county may derive and enjoy from them. Jack v. Moore, 66 Ala. 187; Naftel v. County of Montgomery, supra; Weakley v. Henry, supra.

The appellee relies on the act approved September 2, 1915 (Acts 1915, pp. 341, 342) as authority for the payment of this claim. No other statute is called to our attention, and we have found none. The contention is made that this act authorized the commissioners' court to make appropriation for "maintaining dipping vats," and it is argued that the word "maintain" implies the upkeep of the thing, to support, to sustain and to keep in repair, and that it was just as essential for the county to have the dipping vats as it was to have the fluids and necessary ingredients for the dip, as without both

the work as proposed could not be accomplished.

The necessity of keeping the vats intact is of course apparent, if the contemplated work was to be accomplished, but the necessity of employing certain means in order to accomplish a desired result by no means takes the place of a statute authorizing the expenditure of public funds in an effort to protect the instrumentality that is used as a part of the means.

The act referred to is as follows:

"Section 1. That the boards of revenue, courts of county commissioners, or other like governing bodies of each of the several counties of this state are hereby authorized and empowered to make appropriations for the purpose of constructing and maintaining dipping vats to be used in the work of tick eradication in such county.

"Sec. 2. That each of the counties of this state are authorized and empowered to make such appropriations for the purpose of promoting or encouraging the work of tick eradication in such county in any manner as may be deemed necessary or advisable within the discretion of the board of revenue, court of county commissioners, or other like governing body of any such county, and to this end may make orders regulating the establishment and operation of such dipping vats and use thereof. Provided, however, that nothing herein contained shall be held to authorize any such county to compel the dipping of cattle before an election be held for the purpose of determining whether or not the work of tick eradication shall be taken up in such county as provided by law, or as provided by the rules and regulations of the state live stock sanitary board.

"Approved September 2, 1915."

Regardless of the various definitions accorded the word "maintain," I am of the opinion that the authority conferred on courts of county commissioners by the act referred to "to make appropriations for the purpose of constructing and maintaining dipping vats" and "to make such appropriations for the purpose of promoting and encouraging the work of tick eradication" is not sufficient to authorize the commissioners to agree to compensate a person who guards a vat at the instance of the sheriff and order the compensation paid from the county treasury where all of the transactions had by the commissioners occurred subsequent to the performance of the work.

I am unable to find any indication in this act of a legislative intention to authorize the county commissioners to appropriate county funds at will for guarding dipping vats, and I think the judgment should be reversed, and one rendered here for the appellant; the case being submitted on an agreed statement of facts.