ADOLPH and another, Respondents, vs. ADOLPH and others, Appellants.

*January 11—January 30, 1912.*

*Reformation of written instruments: Fraud or mistake: Degree of proof: Parent and child: Conveyance and contract for support: Consideration: Construction.*

1. Duly acknowledged written instruments are not to be set aside or reformed on the ground of fraud or mistake unless the fraud or mistake be established so clearly as to leave no substantial doubt.

2. A son purchased his parents' farm, paying $1,600 in cash and being allowed $600 for wages.  A deed reciting a consideration of $5,600 and providing that the son should support the parents during their lives and in case of non-agreement should pay them $2,400; a mortgage for $3,400, said to be "the balance due" on the property, to become due ten years from date; and a bond for the parents' support, or in case of non-agreement for payment to them of $2,400, were executed.  The mortgage was. not accompanied by a promissory note, but referred to a bond bearing even date.  *Held* that, although said instruments are confused in their recitals and are incomplete, it is not necessary to reform them on the ground of fraud or mistake, but with the aid of the oral evidence the real contract of the parties. can be gathered from them, to wit: that the whole consideration was $8,000, that the mortgage expressed the amount that was to be paid in any event, and that the bond secured payment of the value of the support in case the parties could not. agree to live together.

APPEAL from a judgment of the circuit court for Manitowoc county: MICHAEL KIRWAN, Circuit Judge.  *Affirmed.*

This is an action in equity to declare and enforce an equitable lien for unpaid purchase money upon an eighty-acre farm. The plaintiffs are husband and wife and of the ages of seventy-eight and seventy years, respectively. Prior to July 31, 1907, they owned and resided upon the farm in controversy, and had resided there for about fifty years. They had four sons and four daughters, all adults, and six of them resided away from home. One son, the defendant *Anton,* aged thirty-one years, and one daughter, named Mary, then resided on the farm with their parents. *Anton* had lived upon the farm since reaching his majority, and worked thereon nearly all the time, excepting for several years he had in the fall season operated a threshing machine for his own profit. There was upon the farm live stock, farm machinery, and implements of the value of about $1,000. The value of the farm itself is not very satisfactorily proven. Some witnesses place the value as low as $4,800, but there is other evidence tending to show that it was worth considerably more. The defendant *Anton Adolph,* when assessor, assessed it at $4,900. On the 31st of July, 1907, an arrangement was made between the plaintiffs and the defendant *Anton* by which the farm was deeded to *Anton* in consideration of an agreement to support the plaintiffs during their lives, the payment down of $1,600 in cash, and the payment in the future of certain other sums, the amount of which is in dispute in this action. The papers were drawn by one Bertsche, a neighboring justice of the peace, who had little idea as to how such papers should be drawn. The papers consisted of a warranty deed, a mortgage, and a bond. The deed was on a printed blank in the usual form, recites a consideration of $5,600, and contains the following provision immediately after the description of the real estate:

"All Personal Property now on premises and Household Furniture Except Thre Beds. Party of the second part also Agres to Leave partys of the first partys to have the youse of

the House and One Bed room in the first Story siduaded in the South West Corner and to Provide them with suvicent Provisions for there living during natural Live and in case of non agreement said party of the second part agrees to pay to Partys of the first Partys Two Thousand Four Hundred Dollars ($2,400) for there support."

The mortgage which was executed by *Anton* at the same time and covers only the homestead forty-acre tract states that it is given "for and in consideration of the sum of $3,400." It also contains the following proviso, those parts which are in italics being written, and the remainder being part of the printed blank:

"Provided . . . that if . . . the party of the first part . . . shall . . . pay or cause to be paid to the said *partys* of the second part . . . the sum of *three thousand four hundred with interest at the rate of three and one-half per cent.* (3½%) *per annum. The above mentioned sum is the balance diew on above described property and becomes diew on the thirty-first day of July, 1917. But payments can be made on and before that time and in sums to suite* according to the conditions of a certain *bond* bearing even date herewith executed by . . . said party of the first part to the said *partys* of the second part as collateral security, then these presents and the said . . . shall cease and be null and void."

The bond executed at the same time by *Anton* to his parents in the penal sum of $2,400 was conditioned that the said *Anton*

"shall well and truly pay or cause to be paid unto the above named *Christ Adolph* and *Regena Adolph* his wife or a certain Attorney executors administrator or assigns the sum of Two Thousand Four Hundred Dollars on demand in case of Non Agreement without fraud or delay then the preceding obligation is to be void otherwise to remain in full force and virtue.

"Said *Anton Adolph* also agrees to provide said *Christ Adolph* and *Regena Adolph* his wife with the youse of the house and one Bedroom three Beds Provisions and fuel while

they agree and in case of Disagreement said *Anton Adolph* shall pay on demand the said Two Thousand Four Hundred Dollars and after the Deth of said *Christ Adolph* and *Regena Adolph* this Bond shall be void and of no effect."

No further papers were executed, but the deed, mortgage, and bond were recorded in the office of the register of deeds three days later.   At the time the papers were executed *Anton* paid $1,600 in cash to his father.   No promissory note was executed because the scrivener did not know that such a paper was usual or necessary.   After the execution of these papers the plaintiffs and their daughter Mary and *Anton* continued to live together in the homestead until *Anton's* marriage in June, 1908.   Thereafter there was more or less discord, and the daughter Mary left the homestead in August, 1908, and in the following November the parents left because of the disagreements and never returned.

The plaintiffs claim in this case that the arrangement which they made with their son *Anton* was that he was to pay a total consideration of $8,000 for the farm, viz.: $1,600 down, $3,400 within ten years after the sale, the payment of which was to be secured by the mortgage on the land, and a balance of $3,000 was to be paid in case they could not live agreeably with *Anton* and decided to leave the house and live elsewhere. On the other hand, *Anton* claims that the real agreement was that he was to pay $5,000 for the farm, of which $1,600 was to be paid down, $1,000 was to be paid in ten years, and $2,400 was to be paid in case the parties could not agree and the plaintiffs were forced to live elsewhere.   The plaintiffs and their daughter Mary and their son Christ testified that the transaction was in substance as the plaintiffs claimed it to be.   On the other hand, the scrivener and the defendant *Anton* testified to the other version.   The court found in accordance with the plaintiffs' version, except that it was found that the agreement was modified before the execution of the papers

so that *Anton* was allowed $600 for wages, leaving $2,400 instead of $3,000 as the amount to be paid in case the parties could not agree to live together.

On November 11, 1909, the plaintiff *Christian* delivered the bond and mortgage to an attorney for collection, and in the following month *Anton* paid to the parents the sum of $3,400 and interest to the date of the payment. Thereupon the plaintiffs executed a release in satisfaction of the mortgage, which recites that the bond for which the mortgage was given as security "is fully paid, satisfied, and discharged." This action was brought soon after the discharge of the mortgage.

The trial court, after finding the facts as above stated, concluded that there was still $2,400 of the purchase price of the premises unpaid, and that the sum constituted a lien upon the entire premises. Judgment was entered providing for the enforcement of such purchase-money lien, and from that judgment the defendants appealed.

*Isaac Craite,* for the appellants.

For the respondents there was a brief by *Charles Voigt,* attorney, and *Emil Baensch,* of counsel, and oral argument by *Mr. Voigt.*

VINJE, J. It is contended by the defendants that it is necessary to reform and correct the deed and mortgage in question in order to sustain the plaintiffs' recovery in this action, and hence that the evidence must be so clear and convincing as to leave no substantial doubt. Starting from this premise he contends with much reason that the evidence does not come up to the required standard and that the judgment must be reversed. The premise is doubtless correct: duly acknowledged written instruments are not to be set aside or reformed on the ground of fraud or mistake unless the fraud or mistake be established so clearly as to leave no substantial doubt. *Burnham v. Burnham,* 119 Wis. 509, 97 N. W. 176, and cases

cited.   We are unable, however, to conclude that it is neces-
sary to set aside or reform any instrument in the present case.
The most that can be said is that the various written instru-
ments are confused and incomplete.   It cannot be said that
they contain provisions which fix the amount of the consider-
ation at any sum less than $8,000.   The deed acknowledges
receipt of a present consideration of $5,600 and contains a
provision that the grantee in addition is to support the grant-
ors during their natural lives, and in case of nonagreement
pay them $2,400.   This clearly points to a total consideration
of $8,000.   The mortgage is for the sum of $3,400, which is
said to be the "balance due" upon the property, and that sum
unquestionably was the entire balance due at that time, be-
cause plaintiffs were to live with the defendant *Adolph,* and
the $2,400 named in the deed was not due and would never
become due except in the contingency (then doubtless re-
garded as remote) that the parties could not agree to live to-
gether.

It seems to us much more probable that the scrivener would
have drawn the papers as he did if the agreement was as con-
tended for by the plaintiffs than if it was as the defendants
contend.   A consideration of $5,600 was recited in the deed,
made up as follows: $1,600 cash; $600 allowed for wages—
deducted from the claim of $3,000 for support,—and balance
of $3,400 secured by mortgage.   The deed further provided
that the grantee should support, plaintiffs in the old home
during their natural life, and in case of disagreement pay
$2,400 in lieu of support.   The scrivener, after the substance
of the proposed agreement was explained to him, called the
attention of the parties to the fact that in case of a disagree-
ment the plaintiffs had no security for the $2,400 due them
for support, and suggested a bond.   This was agreed to.   So
he made out a mortgage for $3,400 on the homestead forty,
and a bond for $2,400, to be valid only in case of a disagree-
ment.   If it was understood by the parties, as now claimed by

defendants and the scrivener, that the $2,400 in the bond was included in the mortgage, then the plaintiffs had ample security for their support and no bond was necessary. Yet all the parties testified that the scrivener suggested a bond as security for the support in case of a disagreement. It is now claimed by the defendants that in case plaintiffs continued to be supported till their death, only $1,000 of the mortgage of $3,400 was to be paid, but that they were to pay interest on the whole sum whether or not there was a disagreement. If that was the contract, it is difficult to see why those provisions were not mentioned somewhere in the papers, by way of recital or otherwise. To sustain such an agreement necessitates more of a reformation and greater disregard of provisions in the papers than does the sustaining of plaintiffs' claim. As before stated, this is a case where the real contract made by the parties must be gathered from what was actually intended to be done rather than from the contents of the papers drawn, owing to their confused recitals and to the admitted fact that the scrivener did not carry out the intent of either party as now claimed. In our judgment the mortgage expressed the amount that was to be paid in any event, and the bond was given to secure the value of the support in case of a disagreement. We are led to this conclusion not only by the findings of the trial court and the weight of the oral testimony, but by the papers as actually drawn. True, there are recitals in the papers inconsistent with this conclusion, but they are not deemed controlling for reasons already stated. We are satisfied the trial court properly found there was still due the sum of $2,400 on the purchase price and that such sum was a lien upon the entire premises.

*By the Court.*—Judgment affirmed.