Bursinger vs. The Bank of Watertown.

---

BURSINGER, Appellant, vs. THE BANK OF WATERTOWN, Respondent.

*October 12 — November 3, 1886.*

*(1, 2) Rescission of contracts: Fraud: Drunkenness: Estoppel: When suit in equity unnecessary. (3, 4) Assignment of life insurance policies: Insurable interest: Parent and child.*

1. The assignor of life insurance policies wrote to the insurance company that the assignments were obtained from him by fraud and conspiracy between the assignee and his (assignor's) father, that he

| 67 | 75 |
|----|----|
| 78 | 35 |
| 67 | 75 |
| 86 | 10 |
| 67 | 75 |
| 95 | 587 |
| 67 | 75 |
| 54 LRA 230n | |
| 54 LRA 231n | |
| 54 LRA 440n | |
| 54 LRA 452n | |

was told they were a matter of form and a temporary arrangement only for the accommodation of his father, and that he was induced to execute them by the urgent request of his father, without time to consider the matter or take advice in relation thereto. *Held*, that this did not estop him from alleging that the assignments were void because of his incapacity, by reason of drunkenness, to make the same.

2. An assignor of insurance policies may maintain an action to recover the policies or their value on the ground that he was incapacitated by drunkenness to make the assignments, without first having the assignments set aside by a suit in equity.

3. A policy of life insurance obtained in good faith by a person having an insurable interest in the life assured, may be assigned to any person with the consent of the company.

4. An assignment by a son of insurance policies on his own life, as security for a debt due from his father to the assignee, is valid.

APPEAL from the Circuit Court for *Jefferson* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

Action to recover of the defendant bank the value of two life insurance policies, for $1,000 each, on the life of the plaintiff. One policy was a ten-year policy, and all the premiums thereon were fully paid at the time of the alleged assignment thereof by the plaintiff to the defendant. The other was what is called an endowment policy, payable at the expiration of fifteen years from the date thereof, to wit, February 7, 1886. All the premiums on the policy had been fully paid up to the date of said alleged assignment, viz., October 13, 1883.

The defendant held the possession of these policies at the time of the commencement of this action by virtue of an assignment of each of said policies, made by the plaintiff to the bank, bearing date October 13, 1883. The only premium paid on either of the policies by the defendant was the last premium on the endowment policy, payable February 7, 1886, $66.02.

Both policies were assigned by the plaintiff to the bank

on the 13th of October, 1883, by written assignments executed by the plaintiff under seal. The assignments were made for the purpose of securing the payment to the bank of several notes held by said bank against the father of the plaintiff, and such assignments were made at the request of his father for the purpose above stated. The notes for which the bank claims to hold such policies were unpaid at the time the action was commenced. The policies were duly demanded of the bank before the commencement of the action, and the bank refused to deliver them to the plaintiff.

The grounds upon which the plaintiff claims the right to the possession of the policies or their value are the following: *First*, he alleges that when he made the assignments he was, by reason of drunkenness, wholly incapable of making an assignment; and, *second*, that the assignments are void in law because they were made to a party having no insurable interest in the life of the plaintiff.

The allegations of the complaint upon which it is claimed that the plaintiff should not be bound by his assignment, on account of the condition of his mind at the time the same was made, are as follows: "That, at the time the defendant so obtained the plaintiff's signature to said paper or papers, the plaintiff's mind was so crazed, confused, and debilitated, and he was in such a state and condition of mind, to defendant's knowledge, that he was unable to, and could not and did not, understand or comprehend the transaction at all, or what he was doing, and that he was unable to, and did not and could not, understand or comprehend or know what the said paper or papers were, or that he was making or signing any kind of transfer or assignment of said policies, or either of them, to the defendant, or to any other person, for any purpose whatever; that at the time last aforesaid the plaintiff's mind was so much diseased, debilitated, and crazed by and from the effects of intoxicating liquors then and theretofore taken and drank by him, that he was, to defend-

ant's knowledge, unable to, and could not and did not, at all comprehend or understand what he was then doing, or the transaction then had, or that he was making or signing any kind of transfer or assignment of said policies, or either of them, to the defendant, or to any one else, for any purpose whatsoever."

Upon the trial, after hearing the evidence offered by the plaintiff, the learned circuit judge, on motion of the defendant, ordered that the plaintiff be nonsuited, to which order the plaintiff duly excepted, and from the judgment entered upon such nonsuit the plaintiff appeals to this court.

*Geo. W. Bird,* for the appellant, argued, among other things, that the assignments obtained from the plaintiff while he was so intoxicated as to be incapable of comprehending any business transaction were void and passed no title to the defendant. *Dunn v. Amos,* 14 Wis. 106; *Ingalls v. State,* 48 id. 647; *Wilcox v. Jackson,* 51 Iowa, 208; *Phelan v. Gardner,* 43 Cal. 306; *Reinskopf v. Rogge,* 37 Ind. 207; *Cross v. State,* 55 Wis. 261; *Harbison v. Lemon,* 3 Blackf. 51; *Newell v. Fisher,* 11 Smedes & M. 431; *French's Heirs v. French,* 8 Ohio, 214; *Crane v. Conklin,* 22 Am. Dec. 519; *Reynolds v. Waller,* 1 Wash. (Va.), 164; *Wade v. Colvert,* 12 Am. Dec. 652, and note. The assignments were void because the bank had no insurable interest in the plaintiff's life. May on Ins. 107, sec. 110; *Stevens v. Warren,* 101 Mass. 566; *Mut. Ben. Ass'n v. Hoyt,* 46 Mich. 473; *Ruse v. Mut. Ben. L. Ins. Co.* 23 N. Y. 516; *Mo. Val. L. Ins. Co. v. Sturges,* 18 Kan. 93; *Franklin L. Ins. Co. v. Hazzard,* 41 Ind. 116; *Warnock v. Davis,* 104 U. S. 775; *Cammack v. Lewis,* 15 Wall. 643; *Ætna L. Ins. Co. v. France,* 94 U. S. 561; *Conn. Mut. L. Ins. Co. v. Schæfer,* id. 460; *Langdon v. Union Mut. L. Ins. Co.* 14 Fed. Rep. 272; *Briggs v. Nat. L. Ins. Co.* 11 id. 458; *Brockway v. Mut. Ben. L. Ins. Co.* 9 id. 249; *Armstrong v. Mut. L. Ins. Co.* 20 Blatch. C. C. 493. The assignments are also void under section 4538, R. S.

*Harlow Pease,* for the respondent.

TAYLOR, J.   Upon an examination of the evidence given on the part of the plaintiff as to the condition of his mind at the time he executed the assignments, we are clearly of the opinion that such evidence tended to prove the allegations of his complaint upon the question of his capacity to execute such assignments at the time the same were made. The evidence tended to show that, by reason of his intoxication, he was incapable of comprehending what he was doing at the time he executed said assignments, and was therefore within the well-established rule of law that a drunkard, when in a complete state of intoxication, so as not to know what he is doing, has no capacity to contract. 1 Benj. on Sales (Am. ed. Corbin), 42; *Gore v. Gibson*, 13 Mees. & W. 623; *Cooke v. Clayworth*, 18 Ves. Jr. 12; Story on Cont. (4th ed.), §§ 44, 45, and cases cited in notes; *Belcher v. Belcher*, 10 Yerg. 121; *French's Heirs v. French*, 8 Ohio, 214; *Jenners v. Howard*, 6 Blackf. 240; *Mitchell v. Kingman*, 5 Pick. 431; *Webster v. Woodford*, 3 Day, 90; *Seaver v. Phelps*, 11 Pick. 304; *Rice v. Peet*, 15 Johns. 503.

It is not very seriously contended by the learned counsel for the respondent that the evidence of the plaintiff's incapacity, by reason of drunkenness, to make the assignments at the time they were made, was not sufficient to carry the case to the jury on that question; but it is contended that the subsequent acts of the plaintiff in relation to the matter estopped him from now alleging his drunkenness in avoidance of the assignments.   The only fact shown in the plaintiff's evidence which is inconsistent with his claim that he was so drunk at the time as not to know what he was doing, is a subsequent written communication to the insurance company upon the subject of said assignments, in which the plaintiff states that such assignments were obtained from him by fraud and conspiracy between the bank and the father of the plaintiff, and that he was told at the time he executed them that the assignments were a matter

of form, and a temporary arrangement only, for the purpose of accommodating his father; and that he was induced to execute said assignments by the urgent request of his father, without time to consider upon the matter or take advice in relation thereto. The communication is set forth at length in the bill of exceptions.

This communication, it is true, tends to throw suspicion upon the claim now made by the plaintiff that he was in such a state of mind at the time he executed the assignments as not to comprehend what he was doing, but is not conclusive upon that question, and, notwithstanding this communication to the company, he has the right to ask the court and jury to pass upon his mental condition at the time the assignments were made. There is nothing in the nature of an estoppel against the plaintiff by reason of this communication to the insurance company. It is a mere statement of appellant somewhat in conflict with the claim now made by him on the trial, and leaves the truth of the matter still to be ascertained. There is no pretext that the defendant has been in any way affected to its prejudice by said statement, and, in fact, it does not appear that the defendant knew of the statement until long after this action had been commenced. The following cases, cited by the learned counsel for the appellant, show that there is nothing in the nature of an estoppel on the plaintiff by reason of the statement made by him to the company: *Husbrook v. Strawser*, 14 Wis. 403; *Dahlman v. Forster*, 55 Wis. 382; *Warder v. Baldwin*, 51 Wis. 450; *Warder v. Baker*, 54 Wis. 49; *Guichard v. Brande*, 57 Wis. 534; *Winegar v. Fowler*, 82 N. Y. 315, 318.

We think the court erred in taking the case from the jury upon the question of the capacity of the plaintiff to execute the assignments at the time the same were made.

It is insisted by the learned counsel for the respondent that if there was evidence on that point sufficient to carry

the case to the jury, still the nonsuit should be sustained on the ground that the contract is simply voidable, not void, and the title to the policies passed to the defendant by the assignments; and that no action at law will lie, either to recover the policies or their value, until such assignments are set aside by an action in equity. This court has repeatedly held that a contract of sale may be rescinded by either party on account of the fraud of the other, and, when so rescinded, he may bring an action at law to recover of the other party what he has paid or given to the other party on such contract.

In this case the plaintiff had received nothing on the sale of the policies, and his demand for a return of them was all that was necessary to a rescission of the contract of sale. We think he can maintain the action for the policies or their value, if he succeeds in showing the assignment was void on account of his drunkenness at the time of the sale. See cases cited by the learned counsel for the appellant on this point.

For the error above stated, the judgment of the circuit court must be reversed. But the learned counsel for the appellant contends that the assignments in this case are void at law, because assigned to a party who has no insurable interest in his life, and therefore, independent of the question of his incapacity to make the assignments on account of his drunkenness, he is entitled to recover upon that ground. As there must be a new trial in the case, where this point may be pressed upon the circuit court, and the point having been fully argued on this appeal, we feel called upon to give our opinion upon that question.

We think this question has been decided against the appellant by this court in the following cases cited by the respondent: *Archibald v. Mut. L. Ins. Co.* 38 Wis. 542; *Clark v. Durand,* 12 Wis. 223; *Kerman v. Howard,* 23 Wis. 108; *Foster v. Gile,* 50 Wis. 603. There being no question

but that the policy was originally obtained for the benefit of a person having an insurable interest in the life of the assured, the policy being upon the life of the assured himself, that the owner of such policy may thereafter lawfully assign the same to any person, with the assent of the insurance company, is sustained by the great weight of authority, and, as we think, by sound principles of law. See the following authorities: *St. John v. Am. Mut. L. Ins. Co.* 13 N. Y. 31; *Valton v. Nat. F. L. Ass. Co.* 20 N. Y. 32; *Olmsted v. Keyes,* 85 N. Y. 593; *Lemon v. Phœnix Mut. L. Ins. Co.* 38 Conn. 294, 302; *Fairchild v. N. E. Mut. L. Ass'n,* 51 Vt. 625; *Clark v. Allen,* 11 R. I. 439; *Ashley v. Ashley,* 3 Sim. 149; *Mut. L. Ins. Co. v. Allen,* 138 Mass. 24; *Harrison v. McConkey,* 1 Md. Ch. 34; Angell on Fire Ins. § 325; *Langdon v. Union Mut. L. Ins. Co.* 22 Am. Law Reg. 385; *Campbell v. N. E. Mut. L. Ins. Co.* 98 Mass. 381; *Palmer v. Merrill,* 6 Cush. 282.

The only case cited by the learned counsel for the appellant which really holds a different doctrine is *Mo. Valley Ins. Co. v. Sturges,* 18 Kan. 93. The case of *Franklin Mut. Ins. Co. v. Hazzard,* 41 Ind. 116, was a case where the assured, after paying two annual premiums, announced to the company that he should not keep up the policy, and he declined to pay a premium then past due. Shortly afterwards he assigned the policy to Hazzard for the sum of $20. The premium paid by the assured was $62.40. The court say: "The question arises whether a person can purchase and hold for his own benefit, and as a matter of mere speculation, a policy of insurance on the life of one in whose life he has no insurable interest." It might well be said that the purchase of the policy in this case, after the holder determined not to continue it, was equivalent to taking out an original policy on the life of the assured.

All the cases cited by the learned counsel in the courts of the United States were cases where it was evident

the original policies were taken out for the benefit of the persons to whom they were immediately assigned, and who in fact paid the premiums on the policy from the beginning. Taking out the policies in the names of the assignors in those cases was clearly a cover for acquiring a wager policy on the life of a person in whom the person really insured had no insurable interest. The language of the learned justice of the supreme court of the United States who wrote the opinion in the case of *Warnock v. Davis*, 104 U. S. 775, when considered in the light of the facts of the case, does not conflict with the rule laid down by this court and the courts above mentioned.

Whatever objection there might be to allowing the assignment of a life policy, upon which the future premiums are to be paid, during the life of the assured, no such objection can be fairly raised against the assignment of a policy upon which all the premiums have been paid, and the payment of the amount due is alone dependent on the death of the assured, nor to the assignment of an endowment policy where nearly all the payments have been made.

It is not an established rule of law that every contract is void which gives the party to it a pecuniary interest in the death of the other party or of a third person. If that were the law, then every conveyance, will, or other instrument, which conveyed to another an estate in reversion, would be void, as the reversioner is certainly interested in the speedy demise of the person owning the life estate. There would seem to be no greater reason for holding void a sale or assignment of a life insurance policy which has been obtained in good faith by the holder, to a third person, with an agreement on his part to pay the future premiums and receive the insurance money on the death of the assured, than there would be for holding that a person who held a life estate in real property could not lease such estate for

Bursinger vs. The Bank of Watertown.

the term of his life to the reversioners, upon the payment of a stipulated annual rent to be paid to the party having the life estate. In that case, the party taking the life lease would have just as much interest in the speedy death of the holder of the life estate as the purchaser of an insurance policy upon which annual premiums are to become due has in the death of the assured.

The mere fact that a person who becomes the purchaser of a life policy may thereby become interested in the speedy death of the person to whom the policy is issued, can be no legal ground for holding such purchase void. In all the decided cases where such assignments have been held void, there has also existed the fact that the assignee or purchaser has taken the policy, not in good faith, paying the value thereof, but as a speculation upon the life of the party in whom he has no interest, and so the transaction has been brought within the rule against wagering policies. Nor are we able to perceive why the holder of a valid policy should be prevented from realizing the value of the same to him, before his death, by a *bona fide* sale or assignment thereof. Such sale or assignment may, in fact, be absolutely necessary in order to get any benefit of his policy. The holder may have paid thousands of dollars in premiums, through a long series of years, and a time may come when he becomes unable to pay the premiums to become due, and he must either sell his interest in the policy, or suffer it to lapse, and lose all the premiums paid. Under such circumstances, can there be anything against public policy or the law which will prevent the unfortunate holder of the policy from selling the same for the best price he can, and so get some benefit of his previous payments? We think not. The only reason for holding such sale void is because it gives the purchaser a pecuniary interest in his speedy death, and, as we have seen above, that fact alone has never been held sufficient to render a contract void. So far from this fact being

a cause for holding the contract void, the law of this state expressly sanctions the issuing of wager policies for the benefit of a married woman, and thus, in all such cases, gives her a pecuniary interest in the speedy death of the person so insured for her benefit. See sec. 2347, R. S. 1878.

But there is another ground upon which the assignment of the policies in this case can, we think, be upheld in case the plaintiff was at the time competent to make them, viz., the person for whose benefit in part they were made had an insurable interest in the life of the plaintiff. The evidence shows that the assignments were made as security for a debt due from the father of the assured to the bank, and so was for the benefit of the father as well as of the bank. That the son has an insurable interest in his father, and the father in the son, would seem to be supported by the authorities. See *Ætna L. Ins. Co. v. France*, 94 U. S. 561; *Loomis v. Eagle H. & L. Ins. Co.* 6 Gray, 399; *Forbes v. Am. Mut. L. Ins. Co.* 15 Gray, 249; *Reserve Mut. Ins. Co. v. Kane*, 81 Pa. St. 154; *Warnock v. Davis*, 104 U. S. 775; May on Ins. § 107, p. 113, and cases cited; *Williams v. Wash. L. Ins. Co.* 31 Iowa, 541; *Mitchell v. Union L. Ins. Co.* 45 Me. 104; *Hoyt v. N. Y. Life Ins. Co.* 3 Bosw. 440.

It is held in the case of *Ætna L. Ins. Co. v. France*, *supra*, that the relationship of the parties divests the policy of those dangerous tendencies which render those policies contrary to good morals; and in the Pennsylvania case it was held that a statutory provision requiring the father to support the son, and the son the father, in case either required the support of the other, was a sufficient interest to support a life policy.

For the reason that the record discloses the fact that the plaintiff produced evidence on the trial tending to show that he was incompetent, on account of intoxication, to make the assignments in question at the time they were

made, it was error for the circuit court to nonsuit the plaintiff, and for that error the judgment must be reversed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

See note to this case in 30 N. W. Rep. 291.— REP.

