BURNHAM, Respondent, vs. BURNHAM and others, Appellants.

*October 21—November 17, 1903.*

*Deeds: Setting aside for fraud: Degree of proof: Drunkenness: Capacity to contract: Attorney and client: Conspiracy: Settlement between husband and wife: Ratification: Waiver.*

1. A deed or contract should not be set aside for a fraud in fact unless such fraud is proven by clear and satisfactory evidence.

2. A person addicted to the habitual and excessive use of intoxicating liquor is not incompetent to contract and convey property

unless his reason is dethroned by actual intoxication or his understanding so impaired as to render him mentally unsound when the act is performed. .

3. A finding of the trial court that attorneys who were acting for plaintiff's wife in negotiating a settlement with him had represented to him that they were acting as his attorneys in the matter, and that he relied upon them to protect his interests and legal rights, and a further finding that they had conspired with the wife to cheat and defraud plaintiff of his property, are *held* to be contrary to a clear preponderance of the evidence.

4. It appearing that plaintiff expressed his approval of a settlement with his wife whereby he conveyed to her a half interest in his real property; that during three or four months thereafter he fully understood the terms of the settlement and treated the matter as satisfactorily arranged and concluded; and that, after taking counsel as to his right to have the agreement and deed set aside for fraud, he nevertheless insisted upon having a mortgage of the property executed by himself and his wife, pursuant to the terms of the settlement, for the purpose of paying his debts, it is *held* that he thereby ,ratified the settlement and waived any right to revoke or annul it.

APPEAL from a judgment of the circuit court for Milwaukee county: JOHN K. PARISH, Judge. *Reversed.*

The appeal is by defendants from a judgment annulling a deed of conveyance made by plaintiff, *Clinton Burnham,* to his wife, *Anna Burnham,* and canceling a mortgage on the property described in the deed, given by *Anna Burnham* to D. G. Rogers and *Charles D. Mann.*

On and before February 6, 1901, the plaintiff, *Clinton Burnham,* was the owner of an estate of considerable value in the city of Milwaukee. He had always lived there, and had established a household there for himself and defendant *Anna Burnham,* his wife, immediately after their marriage in 1894. They lived together except when family differences and difficulties separated them for a time, and until reconciliations were affected and their differences adjusted and marital relations were resumed. In the month of January, while living separated, the defendant *Anna M. Burnham*

took steps to secure a settlement with plaintiff of their matters of difference, and, in the event of failure, to press her claims to obtain a divorce and a share of his estate. For this purpose she employed the firm of Rogers & Mann as her attorneys, and through them she secured an agreement with plaintiff on February 6, 1901, whereby it was agreed, in effect, that all causes of action existing between them be mutually settled; that they resume the marital relations which had for some time theretofore been suspended; that plaintiff, by deed, convey to her an undivided one-half interest in all his real estate, excepting the foundry property; and that they mutually execute such deeds and mortgages on this real estate necessarily required to pay and settle plaintiff's indebtedness, not to exceed, however, the sum of $46,000. The agreement contained further stipulations in no way material to this controversy. This agreement was carried out by an immediate execution of a deed conveying an undivided interest in this real estate to her, their resumption of their marital relations, and the beginning of negotiations for a mortgage loan to cover the indebtedness specified, which negotiations were continued to May 21, 1901, when plaintiff and his wife executed a mortgage on this real estate to secure a loan for the plaintiff of the sum of $46,000, to be applied in payment of his debts, as agreed between the parties.

This action was commenced on the 27th day of May, 1901, to cancel and declare null the contract and deed above referred to, between plaintiff and his wife, and the mortgage given to Rogers & Mann to secure the amount due them for services rendered in these transactions and this litigation, upon the grounds that plaintiff's mind and memory were impaired to the extent that he was incapable of fully comprehending and transacting ordinary business affairs, and that the defendants wickedly conspired and colluded together to cheat and defraud plaintiff, and did, through false and fraudulent means, deprive him of his property for their benefit.

These charges the defendants severally deny, and allege that these negotiations were carried on and this settlement was made openly and honestly, in good faith, with the purpose and intent to deal justly and lawfully between plaintiff and his wife, *Anna M. Burnham,* in seeking to adjust and settle the matters in dispute between them.

The trial court found, in substance, that the proof sustained the allegations of the complaint, and awarded judgment setting aside the contract of settlement, and annulling the deed whereby he conveyed to her an undivided one-half interest in the real estate described therein, and the mortgage given by her to Rogers & Mann. From this judgment, the defendants appeal.

For the appellants there was a brief by *W. J. Turner,* of counsel, and *Rogers & Mann,* attorneys; a supplemental brief by *Miller, Noyes & Miller,* of counsel for appellants *Mann* and the estate of D. G. Rogers; and oral argument by *Mr. Turner* and *Mr. George P. Miller.*

For the respondent there was a brief by *Fiebing & Killilea,* and oral argument by *H. J. Killilea.*

SIEBECKER, J. This action is brought to set aside a certain contract and deed which it is alleged defendants procured from plaintiff by fraud, when he was incapable of comprehending and transacting his business, on account of mental impairment induced by the excessive use of intoxicating liquors. Many errors are assigned upon the ground that the findings of fact by the trial court are not supported by the evidence. This is a case wherein relief is sought for a fraud in fact, which it is alleged infected the transaction and rendered it voidable in law. In such cases the fraud must be proven by clear and satisfactory evidence.

"Solemnly executed instruments are not to be set aside or reformed except on evidence sufficient to establish mistake

or fraud so clearly as to leave no substantial doubt." *Baumann v. Lupinski,* 108 Wis. 451, 84 N. W. 836; *Lavassar v. Washburne,* 50 Wis. 200, 6 N. W. 516, and cases cited; *Fillingham v. Nichols,* 108 Wis. 49, 84 N. W. 15.

After a careful examination and scrutiny of the evidence, we come to the several inquiries presented on this appeal:

1. Did the court err in finding that the plaintiff had been so excessively addicted to the use of intoxicating liquors that his mind and memory were impaired to an extent which made him unable to fully comprehend his business affairs? Much evidence was adduced upon this inquiry by both parties. It is shown that plaintiff had been addicted to the excessive use of intoxicating liquors for a number of years before the contract and deed in question were executed, and that such excesses had produced attacks of sickness of body and mind, incapacitating him at such times from transacting business. The evidence also shows that, when not sick and free from intoxication, he possessed his mental faculties and understood, comprehended, and attended to his business affairs. At such times his conduct pertaining to his personal and business affairs was characterized by intelligence, understanding, and common sense, and he assumed to manage his business without the aid of others or reliance on their judgment. The evidence tends to show that plaintiff was actually intoxicated at the first interview between the parties, which occurred several days prior to February 6th, the date of the contract and deed. All negotiations were postponed, and resumed a few days thereafter, when plaintiff appeared perfectly natural and free from intoxication. His testimony indicates that he fully understood the nature, import, and importance of the settlement with his wife, and that he remembered the details thereof with considerable accuracy. We are persuaded that the evidence clearly establishes that plaintiff was free from intoxication when the settlement was negoti-

ated and the deed was executed and delivered; that he fully understood the nature and import of the transaction, and was competent to make a contract.

A person addicted to the habitual and excessive use of intoxicating liquor is not incompetent to enter into contracts and convey property, unless it appears that actual intoxication dethroned his reason, or that his understanding was so impaired as to render him mentally unsound when the act was performed. *Johnson v. Harmon,* 94 U. S. 371; *Van Wyck v. Brasher,* 81 N. Y. 260; *Reinskopf v. Rogge,* 37 Ind. 207.

2. Error is also assigned upon the finding of the trial court that defendants Rogers & Mann fraudulently represented to plaintiff that they were acting as his attorneys in negotiating this settlement, and that he relied upon them to protect his interests and legal rights. In support of this finding, it is argued that Mr. Rogers is shown by the evidence to have been the attorney and counselor of members of the Burnham family for many years; that he settled the father's estate; that the firm of Rogers & Mann had for years been attorneys for plaintiff in various matters, and was so employed at the time of these negotiations. True, they had been attorneys for him at various times, and as such represented him on different occasions. The proof, however, discloses nothing which tends to show they were generally retained as his attorneys for his legal business. The evidence on this subject shows that whenever he desired their services he specifically employed them. It is without dispute that they were not employed by him as attorneys in litigation with his wife at former times, and that he had at various times employed other counsel to attend to legal matters for him. In a letter written to him on January 19, 1901, he was informed by them that they had been retained by *Mrs. Burnham* to secure a possible settlement with him, and, if not successful, that she would commence action. We cannot perceive how plaint-

iff, under such circumstances, could be deceived or misled on the subject of their acting as attorneys for *Mrs. Burnham.* The evidence fails to show that Rogers & Mann were plaintiff's attorneys in any matter pending at the time of the settlement. It is insisted, however, that Mr. Rogers led him to believe that they would protect his legal rights and interests, and that he relied thereon. The specific proof relied on to support this contention is the evidence of plaintiff that Mr. Rogers so stated to him, and an inference from a statement said to have been made by Mr. Rogers to plaintiff's brothers while negotiations were progressing. This is denied by Mr. Rogers and by *Mrs. Burnham* and *Mr. Mann,* who were present at the interview. It also appears that the negotiations were conducted by *Mr. Mann* in his separate office, and that plaintiff suggested and insisted that certain terms and conditions for his protection and interest be inserted as stipulations of the settlement, before he assented to execute the written instruments. After the settlement he asserted that he fully understood its terms, and that it complied with his intention and understanding in settling all controversies between himself and wife. In the light of all these facts and circumstances, plaintiff must be held to have exercised a reasonable amount of intelligence and judgment. His claim that he was misled by Mr. Rogers to rely upon him as his attorney is clearly without foundation. The evidence fails to furnish any reasonable basis for holding that any deception or undue influence was used to deceive or mislead him.

3. Further error is assigned upon the finding that the defendants entered into a conspiracy to cheat and defraud plaintiff of his property. Having found that plaintiff fully comprehended and was capable of transacting his business affairs, and that the evidence fails to show that he was misled into the belief that Messrs. Rogers & Mann were acting as his attorneys in the matter, and that he was informed that they were acting as the attorneys of *Mrs. Burnham,* no

grounds remain for asserting that she and her attorneys had conspired to cheat and defraud him out of his property.

4. Defendants contend that the court erred in refusing to find, as requested by them, that plaintiff had ratified the agreement and deed. It is not seriously contested but that plaintiff, by acts, conduct, and declaration, expressed his approval of the settlement between February 6 and May 21, 1901, the day when he and *Mrs. Burnham* executed the mortgage to secure a loan of $46,000, under the settlement, to pay his debts. It appears that he had taken counsel pertaining to the very question litigated upon this trial some time before this mortgage was executed, yet he insisted on having the mortgage made under the agreement, and it was so made. It appears that during the months of February, March, April, and May he fully understood the terms of this settlement, and that he treated the matter as satisfactorily arranged and concluded. Had the agreement been infected with any legal wrong, these acts would have purged it, and he would be deemed to have adopted and reaffirmed the settlement as originally made. A party to a contract, complaining that he was induced to make it through the wrong of another, cannot assert its invalidity, and at the same time insist that it be carried out and performed. Under such circumstances, insistence on performance is an affirmance and adoption of the agreement, and a waiver of any right to revoke and annul it. Story's Eq. § 1551; *Grymes v. Sanders,* 93 U. S. 55, 23 L. Ed. 798; *Conrow v. Little,* 115 N. Y. 387; *Pence v. Langdon,* 99 U. S. 578; *Moller v. Tuska,* 87 N. Y. 166.

We must hold that the findings of the trial court upon the main issues above specified are contrary to the clear preponderance of the evidence, and therefore erroneous.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment dismissing the complaint; the judgment in this court to that effect to be entered as of the time the cause was submitted, to wit, October 21, 1903.