GREEN and another, Appellants, vs. GUNSTEN, imp., Respondent.

*May 1—May 31, 1913.*

*Bills and notes: Validity: Défenses: Intoxication of maker: Rights of holder in due course.*

1. That the maker of an accommodation note was at the time of signing it in so complete a state of intoxication as to be temporarily deprived of his reason and understanding, renders the note absolutely void as between the maker and payee.
2. Being thus void between the parties, such note is also, under the provisions of the Negotiable Instrument Law (sec. 1676—27, Stats.), void in the hands of a holder in due course.
3. To have this effect, the drunkenness must be so complete as to deprive the maker of the use of his mental faculties. Intoxication merely to the extent that he cannot give the attention to the business that a reasonably prudent man would be able to give is not sufficient.
4. The reason of the rule is that there can be no contract where there is no mind capable of contracting; and in such a case the rule of ordinary care as applied in negligence cases is not applicable. Nor, since the signing of notes is not the usual or probable result of drunkenness, can it be held that the maker should have exercised care not to get drunk.

APPEAL from a judgment of the circuit court for Portage county: A. H. REID, Judge. *Affirmed.*

Action on a promissory note, dated February 16, 1911, for $300, payable six months after date, alleged to have been executed and delivered by the plaintiffs to the defendants. The defendant *Gunsten* answered denying that he signed the note, and averred that his signature to the same was a forgery. He also set up the defense that, if he did sign the note, his signature thereto was procured by connivance and conspiracy between the plaintiffs and his co-maker of the note, O. C. Loomis, and other persons acting for and on behalf of O. C.

Loomis, by reason of which said O. C. Loomis and others acting for and on behalf of him encouraged and induced the defendant *Gunsten* to drink of intoxicating liquors in such large quantities that he became so intoxicated that he was deprived of his reason and understanding, and that if he did sign his name to said note it was done while in such condition and was not done of his own free will and consent; that he received no consideration whatever for said signature, and that the note was used by his co-maker, O. C. Loomis, to secure his obligations to the plaintiffs incurred prior to the making of the note, and was accepted by plaintiffs as security for such obligations.

The jury returned a verdict finding (1) that the defendant *Gunsten* on or about February 16, 1911, did sign and turn over to the defendant Loomis the promissory note sued upon in this action; and (2) that said *Gunsten* at the time of signing said note was so completely intoxicated that he was temporarily deprived of his reason and understanding. Upon such verdict, and on motion of defendant *Gunsten,* the court rendered judgment in his favor dismissing the action, with costs. From such judgment the plaintiffs appealed.

The cause was submitted for the appellants on the briefs of *Fisher, Hanna & Cashin,* and for the respondent on that of *E. L. & E. E. Browne* and *Lloyd D. Smith.*

To the point that voluntary intoxication unless procured by the other party is no defense to a contract even between the immediate parties, counsel for the appellants cited *Dahlmann v. Gaugente,* 238 Ill. 224, 87 N. E. 287. It is not a defense to a note in the hands of a *bona fide* holder for value. 8 Cyc. 52 and cases cited; *State Bank v. McCoy,* 69 Pa. St. 204, 8 Am. Rep. 246; *McSparran v. Neeley,* 91 Pa. St. 17; *Northam v. Latouche,* 4 Carr. & P. 140, 19 Eng. Com. Law, 314; *Stigler v. Anderson* (Miss.) 12 South. 831; *Bush v. Brenig,* 113 Pa. St. 310, 6 Atl. 86.

VINJE, J.    It is admitted that defendant *Gunsten* was an accommodation maker of the note if it was executed under such circumstances as to constitute him a maker in any sense. Plaintiffs claim they were holders in due course, which claim the defendant *Gunsten* disputes.    The trial court, in the disposition of the case, evidently treated plaintiffs as such holders, and we shall assume that they were.    That raises the question whether or not total or complete drunkenness on the part of the accommodation maker of a note at the time of the execution and delivery thereof is a defense as against a holder in due course.

On the grounds of public policy and the necessities of commerce some courts have held that complete drunkenness on the part of the maker of a note at the time of its execution and delivery is no defense against a holder in due course. *State Bank v. McCoy,* 69 Pa. St. 204; *McSparran v. Neeley,* 91 Pa. St. 17; *Smith v. Williamson,* 8 Utah, 219, 30 Pac. 753.    The basis for the rule is thus stated by Joyce, Defenses to Comm. Paper, sec. 69:

"The reasons underlying this rule are that when a man has voluntarily put himself in such a condition and a loss must fall on one of two innocent persons, it should fall on him who occasioned it.    It is also founded on principles of public policy and the necessities of commerce.    The circulation and currency of negotiable paper should not be unnecessarily impeded, and if drunkenness of the maker were a defense to a note in the hands of an indorsee it would clog and embarrass the circulation of commercial paper, and no man could safely take it without ascertaining the condition of the maker or drawer when it was given, though there be nothing unusual or suspicious about the appearance of the note."

That this rule is founded, at least in part, upon substantial grounds of public policy cannot be denied, though it should be observed that drunkenness alone, without the fraud or fault of another, does not lead to the signing of notes.    In

every case, as in the case at bar, the drunken maker has been
taken advantage of by a designing payee or third party, and
it is not strictly correct to say that the fault is that of the
drunken maker alone.   Were that so, there would be more
reason for applying the rule that where loss must fall upon
one of two innocent persons it should fall on him who occa-
sioned it.   Nor can a holder in due course always rest upon
the assumption that the maker, of a note is competent to ex-
ecute it.   Insanity of the maker is a good defense against a
*bona fide* holder, for the latter takes it charged with construc-
tive notice of the legal disability of the maker.   1 Daniel,
Neg. Inst. (5th ed.) §§ 209, 210; Joyce, Defenses to Comm.
Paper, § 71.   It is no greater hardship to charge a holder in
due course with constructive notice of the incapacity of the
maker resulting from complete drunkenness than from in-
sanity.   It is deemed that a doctrine more in consonance with
the spirit of our decisions is stated by Daniel, as follows: "If
the drunkenness were so complete as to suspend all rational
thought, the better opinion is that any instrument signed by
the party would be utterly void even in the hands of a *bona
fide* holder without notice, for, although it may have been the
party's own fault that such an aberration of mind was pro-
duced, when produced, it suspended for the time being his
capacity to consent, which is the first essential of a contract."
1 Daniel, Neg. Inst. (5th ed.) § 214; 1 Parsons, Notes &
Bills, 151; *Gore v. Gibson,* 13 Mees. & W. 623.   But the
drunkenness must be so complete as to deprive the maker of
the use of his faculties.   *Miller v. Finley,* 26 Mich. 249;
*Caulkins v. Fry,* 35 Conn. 170.   Intoxication merely to the
extent that he cannot give the attention to it that a reasonably
prudent man would be able to give is not sufficient.   *Wright
v. Waller,* 127 Ala. 557, 29 South. 57, 54 L. R. A. 440, and
note.   (See authorities cited in note as to degree of intoxi-
cation that will avoid a contract.)   The rule that complete

drunkenness is available as a defense in a suit upon a contract has been clearly recognized by our own court. *Bursinger v. Bank of Watertown,* 67 Wis. 75, 30 N. W. 290; *Burnham v. Burnham,* 119 Wis. 509, 97 N. W. 176.

In *Bursinger v. Bank of Watertown, supra,* the contract under consideration was the assignment of an insurance policy, and the court said:

"The evidence tended to show that, by reason of his intoxication, he was incapable of comprehending what he was doing at the time he executed said assignments, and was therefore within the well established rule of law that a drunkard, when in a complete state of intoxication, so as not to know what he is doing, has no capacity to contract. 1 Benj. Sales (Am. ed. Corbin) 42; *Gore v. Gibson,* 13 Mees. & W. 623; *Cooke v. Clayworth,* 18 Ves. Jr. 12; Story, Cont. (4th ed.) §§ 44, 45, and cases cited in notes; *Belcher v. Belcher,* 10 Yerg. 121; *French's Heirs v. French,* 8 Ohio, 214; *Jenners v. Howard,* 6 Blackf. 240; *Mitchell v. Kingman,* 5 Pick. 431; *Webster v. Woodford,* 3 Day, 90; *Seaver v. Phelps,* 11 Pick. 304; *Rice v. Peet,* 15 Johns. 503."

In *Burnham v. Burnham, supra,* the rule is stated thus:

"A person addicted to the habitual and excessive use of intoxicating liquor is not incompetent to enter into contracts and convey property, unless it appears that actual intoxication dethroned his reason, or that his understanding was so impaired as to render him mentally unsound when the act was performed. *Johnson v. Harmon,* 94 U. S. 371; *Van Wyck v. Brasher,* 81 N. Y. 260; *Reinskopf v. Rogge,* 37 Ind. 207."

The reason for the rule is that there can be no valid contract where there is no mind capable of contracting. That drunkenness may be so complete as to render a person utterly incapable of comprehending the nature of his acts or that he is acting at all is a fact as sad as it is true. "Drunkenness," says Tiedeman, "is, in legal contemplation, an aberration of mind similar in its effect upon the reasoning faculties as tem-

porary insanity. Hence we find that the legal effect of contracts made by one in a state of intoxication is affected in the same way by the intoxication of the contractor as they are by his insanity." Comm. Paper, § 57. If complete drunkenness, by which is meant drunkenness to such an extent as to wholly destroy for the time being the rational faculties of the mind, renders a note absolutely void as between maker and payee, then under the provisions of our Negotiable Instrument Law it is void in the hands of a holder in due course. Sec. 1676 —25 provides:

"The title of a person who negotiates an instrument is defective within the meaning of this act when he obtains the instrument, or any signature thereto, by fraud, duress, or force or fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud and the title of such person is absolutely void when such instrument or signature was so procured from a person who did not know the nature of the instrument and could not have obtained such knowledge by the use of ordinary care."

And sec. 1676—27 reads:

"A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon except as provided in sections 1944 and 1945 of these statutes, relating to insurance premiums, and also in cases where the title of the person negotiating such instrument is void under the provision of section 1676—25 of this act."

By the provisions of this law it will be seen that a holder in due course takes no title where the note was absolutely void in its inception, as where there was no maker capable of executing the instrument. This result follows for the obvious reason that no life, or validity, can be given by transfer to

that which is absolutely void. It is the same as if it had no existence at all. And it is but the expression of the rule embodied in the decisions of this court. *Aukland v. Arnold,* 131 Wis. 64, and cases cited on page 67 (111 N. W. 212).

Plaintiffs argue that the rule of ordinary care as applied in negligence cases obtains under the provisions of sec. 1676 —27 of the Negotiable Instrument Law. It is not necessary to decide the question in this case. The jury found that at the time *Gunsten* signed the note he was so completely intoxicated that he was temporarily deprived of his reason and understanding. Manifestly, while in such condition, the rule of ordinary care does not apply. He was incapable of exercising any care whatever. Nor can it be held that he should have exercised care not to get drunk, for, as before observed, the signing of notes is not the usual or probable result of drunkenness. It is otherwise as to a personal injury. A man may well reasonably anticipate that if he gets drunk and becomes unable to care for himself he may, without the fault of another, sustain bodily harm, or even death itself. But a drunken man, if left alone and not taken advantage of by others, is not, as a mere result of the drunkenness, likely to sign notes or execute any other contracts. The law does not favor drunkenness; nor does it place in the hands of a drunkard any shield against his conscious or rational acts. It simply says that when, through drunkenness or any other means, a man is temporarily or permanently wholly incapacitated from exercising his rational faculties, then he shall not be liable upon what purports to be a contract entered into while in such state, because a mind bereft of reason or conscious rational action is incapable of consenting or contracting. In speaking of the early English doctrine holding that a man should not be allowed to stultify himself by alleging his own lunacy or imbecility, Daniel says: "Such a doctrine sounds more like the gibberish of a lunatic than like the decree of a

humane and enlightened lawgiver. The maxim of the civil law, *'furiosus nullum negotium gerere potest, quia non intelligit quid agit,'* expresses the sense of modern jurisprudence on the subject." 1 Daniel, Neg. Inst. § 209. The same maxim applies equally well to a person in a state of complete intoxication as to an act or result that cannot be said to be reasonably anticipated from mere drunkenness.

*By the Court.*—Judgment affirmed.