[No. 2187]

## F. E. SEELEY, PLAINTIFF-APPELLANT, *v.* JAMES GOODWIN, A. L. WAGNER, J. W. FERGUSON, J. E. KENDALL, AND E. J. LUPIN, DEFENDANTS. E. J. LUPIN, RESPONDENT.

[156 Pac. 934]

1. MORTGAGES—FORECLOSURE—APPEAL—NECESSARY PARTIES.

In suit to foreclose a mortgage, a subsequent purchaser whose right was defeated by execution sale, and the execution purchaser and his grantee, who had deeded the land to one defendant, were not necessary parties to an appeal, which would not be dismissed on that ground.

2. APPEAL AND ERROR—SCOPE OF REVIEW—MATTERS NOT AT ISSUE.

The court on appeal will assume a ruling of the trial court not questioned by counsel for the adverse party to have been correct.

3. MORTGAGES — VALIDITY — CAPACITY OF PARTIES — WHO MAY ATTACK—DEGREE OF PROOF.

Assuming that a subsequent purchaser of the mortgagor may assert the mortgagor's incapacity owing to intoxication at the time of drawing the mortgage, the degree of proof required to show such incapacity on his part is at least equal to that required from one asserting his own incapacity.

4. MORTGAGES—EXECUTION—CAPACITY OF PARTIES—INTOXICATION— EVIDENCE.

The mere fact that signatures to a note and mortgage were poorly made is insufficient to show that the maker was intoxicated.

5. ACKNOWLEDGMENT—EVIDENCE—NOTARY'S CERTIFICATE.

In the absence of direct evidence on the question of mental capacity of the mortgagor owing to intoxication at the time of drawing the mortgage, the fact that the certificate of a notary public showed that the mortgage was acknowledged before him and that he executed it is *prima facie* evidence of due execution.

6. MORTGAGES—EXECUTION—CAPACITY OF PARTIES—EVIDENCE.

Evidence *held* insufficient to show that a mortgagor was mentally incapacitated by intoxication at the time of drawing a mortgage.

APPEAL from Sixth Judicial District Court, Humboldt County; *Edward A. Ducker,* Judge.

Action by F. E. Seeley against James Goodwin and others. From a judgment in favor of defendant E. J. Lupin and order denying new trial, plaintiff appeals. **Reversed.**

*J. M. Frame* and *R. Gilray,* for Appellant:

The lien acquired by writ of attachment affected only whatever title was at the time in Goodwin, and the same did not attach to any interest that had theretofore been acquired by the plaintiff by virtue of the mortgage, even though unrecorded, and at most would have affected only the equity of redemption existing in Goodwin. An attaching creditor, claiming title through an attachment sale, is not in the position of an innocent purchaser, but takes only such an interest as the attached debtor had at the time in the property; and this being only the equity of redemption, he can acquire no title adverse to or superior to a mortgage. (*Virgin* v. *Brubaker,* 4 Nev. 32; *Vaughn* v. *Schmalsle,* 25 Pac. 102; *Dawson* v. *McCarty,* 57 Pac. 816.)

The defense of incompetency through intoxication is in the nature of a personal right, which may be asserted only by the party himself, and is not a right which passes with the conveyance of real estate and runs with the land. Third parties, although privies in estate, cannot assert such a defense. (14 Cyc. 1104.) Such contracts are in their nature voidable and not void. (*Joest* v. *Williams,* 42 Ind. 565; 6 R. C. L. 595–599; *Carpenter* v. *Rodgers,* 61 Mich. 384, 1 Am. St. Rep. 595.)

It was not necessary to serve notice of appeal upon all the parties named in the record as defendants. The action is to foreclose a mortgage, and it was necessary to serve notice of appeal only upon the party who had an interest adverse to appellant. The other defendants named in the record are neither necessary nor proper parties to the action. (*Hinson* v. *Gammon,* Am. Ann. Cas. 1913A, 83; *Nelson Bennet Co.* v. *Twin Falls L. & W. Co.,* 13 Am. Ann. Cas. 172.)

The motion to dismiss the appeal should not be granted, the point involved having been already decided adversely to respondent by this court. (*Douglass* v. *Thompson,* 35 Nev. 196, Am. Ann. Cas. 1914C, 920; *Bliss* v. *Grayson,* 24 Nev. 422, 56 Pac. 231, 25 Nev. 329, 59 Pac. 888.)

*C. E. Robins* and *J. A. Callahan,* for Respondents:

The appeal should be dismissed for want of jurisdiction.

Failure to serve notice of appeal on an adverse party is a jurisdictional defect that deprives the supreme court of the jurisdiction to hear the appeal.    (Rev. Laws, 5322, 5323, 5330, 5331; *Pacific Mutual Life I. Co.* v. *Fisher*, 39 Pac. 758.)

If the position of a party on the record makes him adverse, he must be so considered for the purpose of appeal from the judgment thereon. (*Harriman* v. *Menzies*, 44 Pac. 660; *Vincent* v. *Collins*, 55 Pac. 129.)

Every party whose interest in the subject-matter of the appeal is adverse to or will be affected by a reversal of modification of the judgment or order appealed from, is an adverse party. (*Crouch* v. *Railroad*, 117 N. W. 145; *Lydon* v. *Godard*, 51 Pac. 459; *Lewiston National Bank* v. *Tefft*, 53 Pac. 271; *Titiman* v. *Alamance M. Co.*, 74 Pac. 529; *Bridgham* v. *National Pole Co.*, 147 Pac. 1056; *Davis* v. *Mercantile Trust Co.*, 38 L. Ed. 563.)

The note and mortgage are void, because of the intoxication of the mortgagor at the time of their execution. (*Cameron Barkley Co.* v. *Thornton L. & P. Co.*, 138 N. C. 365, 50 S. E. 695, 107 Am. St. Rep. 532; *Hunter* v. *Tolbard*, 47 W. Va. 258, 38 S. E. 737; *Green* v. *Gunsten*, 142 N. W. 261; *Cavender* v. *Waddington*, 5 Mo. App. 457.)

If there is any evidence to support the finding of the lower court, it will not be disturbed on appeal. (*State* v. *Carson and Colorado Ry. Co.*, 29 Nev. 487.)

By the Court, NORCROSS, C. J.:

This is a suit in foreclosure of a mortgage upon certain real property in the town of Winnemucca. From a judgment in favor of the defendant E. J. Lupin, the plaintiff has appealed.

From the pleadings and evidence in the case it appears that on the 16th day of March, 1909, at San Francisco, State of California, one James Goodwin, named as a defendant in the complaint, gave his promissory note to one Louis Goldstone, a resident of said city and state, for the sum of $175, payable with interest sixty days after date. At the same place and date the said Goodwin gave to said Goldstone a mortgage upon certain lots

belonging to Goodwin in the town of Winnemucca as security for the payment of said note. The note and mortgage were signed by Goodwin, and the execution of the mortgage was acknowledged as of even date before a notary public in and for the city and county of San Francisco. The mortgage was duly recorded at the request of said Goldstone by the county recorder of Humboldt County in the records of said county on the 24th day of March, 1909. It is alleged in the complaint and shown by the evidence that on the 4th day of March, 1910, the said Louis Goldstone, for a valuable consideration, assigned and transferred the said note and mortgage to the plaintiff and appellant, F. E. Seeley.

It appears from the pleadings and evidence that on the 19th day of March, 1909, three days subsequent to the execution of the mortgage, and five days before the recording thereof, the defendant J. W. Ferguson instituted a suit in the justice's court in the town of Winnemucca against the said James Goodwin, and attached the property of the defendant Goodwin described in the mortgage. Having recovered judgment in the attachment suit, the property attached was sold by the constable in satisfaction of the judgment, purchased by the said Ferguson at the constable's sale, and a constable's deed granted to said Ferguson on the 26th day of November, 1909. On the 27th day of May, 1909, the said Goodwin deeded the property to the defendant A. L. Wagner. On the 10th day of February, 1911, the said J. W. Ferguson deeded the property to the defendant J. E. Kendall. On the 25th day March, 1912, the defendant Kendall deeded the property to the respondent Lupin.

In addition to denying, on information and belief, the making or execution of the note or mortgage by Goodwin, the answer of defendant Lupin set up the following affirmative defenses:

(a) That the note and mortgage were void because made, executed, and delivered at a time when the said Goodwin was entirely irresponsible and incapable of

entering into a valid contract by reason of drunkenness.

(b) That, the property having been attached prior to the recording of the mortgage and subsequently sold by the constable in the attachment suit, the rights of the plaintiff were subordinate to the rights of the defendant Lupin.

The case was tried to the court with the aid of a jury, to which were referred two questions, which, together with the answers returned, read as follows:

"Question No. 1: At the time the note and mortgage here in question were given by James Goodwin to Louis Goldstone was James Goodwin so intoxicated as to deprive him of his reason and understanding to the extent that he did not know the effect of those instruments or the nature of the transaction? Answer: Yes.

"Question No. 2: On March 19, 1909, at the time Ferguson's attachment was levied on the lots described in the complaint, had Ferguson any knowledge that the note and mortgage in question were in existence? Answer: No."

1. Preliminary to a consideration of the questions presented upon the merits of the appeal a motion to dismiss the appeal should be disposed of. The defendants Wagner, Ferguson, and Kendall were not made parties to the appeal by service upon them of the notice of appeal. It is contended by counsel for respondent that they are necessary parties to the appeal. We think this contention is without merit. The defendants Wagner and Ferguson failed to answer, and their default was duly entered. The judgment shows that, as against the defendant Goodwin and his administrator (Goodwin having died subsequent to the institution of the suit and prior to the trial), an order of dismissal from the case was entered without objection prior to the trial. Wagner's rights under his deed from Goodwin were cut off by the constable's sale and deed to Ferguson. Whatever rights Ferguson and Kendall obtained were transferred by their deeds and acquired by the respondent Lupin. The judgment was in favor of Lupin alone for

the property and for the costs of suit. We are unable to see how any reversal of the judgment could, under the pleadings and evidence, affect any of the rights of the codefendants as between each other. The only liability of Ferguson to Kendall or of Kendall to Lupin was upon their "grant, bargain, and sell" deeds. It is not contended that the only liability which the statute ·imposes by reason of such deeds (Rev. Laws, 1063) could be of any avail to respondent in this case in the event of a reversal.

Even if it may be said that the several defendants obtained a judgment against the plaintiff to the effect that the note and mortgage were void from their inception, none of these other defendants can assert any rights by virtue of that judgment against the respondent Lupin. So far as the plaintiff in the action is concerned, these other defendants were never necessary parties to the suit. (*Nelson Co.* v. *Twin Falls Co.,* 13 Idaho, 767, 92 Pac. 980, 13 Ann. Cas. 172; *Bliss* v. *Grayson,* 25 Nev. 329, 59 Pac. 888.)

The court below adopted the finding of the jury as shown by the answer to question No. 1, *supra,* and based its decision and judgment thereon.

2. Relative to the second special issue submitted to the jury, the court held that the defendant could acquire no rights in the property superior to the mortgage by reason of the fact that the attachment was levied upon the mortgaged premises prior to recording of the mortgage, but subsequent to its execution. As the correctness of the ruling of the trial court upon this latter point has not been questioned by counsel for respondent, we will assume it to have been correctly decided. Counsel for appellant in support of the court's ruling have cited *Virgin* v. *Brubaker,* 4 Nev. 32; *Vaughn* v. *Schmalsle,* 10 Mont. 186, 25 Pac. 102, 10 L. R. A. 411; *Dawson* v. *McCarty,* 21 Wash. 314, 57 Pac. 816, 75 Am. St. Rep. 841; Rev. Laws, 1038–1040. See, also, 2 R. C. L. p. 860, sec. 72.

3. As to the question of Goodwin's mental condition

at the time he executed the note and mortgage in San Francisco, there was no testimony of any witness who saw him or observed his physical or mental condition at that time. We quote the following from respondent's brief, and assume that it states the evidence, which, by the way, we have read in full, as strongly in support of respondent's contention as the evidence warrants:

"Four or five days after that time [March 16, 1909] Goodwin returned to Winnemucca, Nevada. His physical and mental condition at that time would make any one know that he had been drunk quite awhile; he was emaciated and in such a condition that one would know he had been on a big drunk and had not got back all of his mental faculties; he had been on a drunk not less than ten or twelve days, and had the appearance of having been on a protracted spree prior to that time.

"Witness Ferguson, who had known Goodwin and was well acquainted with him for a number of years, testified that after Goodwin had been drinking for two or three days that the faculties of his mind would be destroyed, and that when he drank he would get very nervous at first, could not be kept in bed, would just run around, stay awake, and be nervous and excitable, and as he kept on drinking he would get so that he could not take care of himself at all, and become filthy in his habits, etc., and incompetent to take care of himself in any manner mentally or physically, could not remember anything at all, and most of his thoughts were a blank to him, and that all he wanted was whisky, and would drink as much as he could get.

"Witness S. G. Lamb, sheriff of Humboldt County, was well acquainted with Goodwin, and proved that when Goodwin drank he was helpless as far as knowing anything, and he was not fit to be at large."

It is not contended, as we understand, that when Goodwin returned to Winnemucca, about the 21st of March, that he was then in an intoxicated condition, or at least was not sufficiently responsible to enter into ordinary business transactions. The witness Ferguson

details his conversations with him upon that occasion which do not indicate that at the time of his return to Winnemucca he was then in such a mental condition as not to know what he was doing and to be responsible for his acts. The most that can be said from the evidence of the witness Ferguson is that the appearance of Goodwin at the time of his return was that he had recently been upon a protracted spree. The evidence is quite convincing that Goodwin was a man addicted to the liquor habit, and would at frequent intervals drink to excess, when he would become totally irresponsible. It is quite clear, however, that Goodwin was not always drunk; that he was sober part of the time and transacted business; that even when drinking he was not always entirely incapacitated.

Upon the assumption that the evidence was sufficient to establish the fact that Goodwin was so drunk at the time he gave the note and mortgage as not to know the nature of his acts, the court below held the law to be that instruments thus executed were not merely voidable, but were absolutely void, not only as against the person executing the instrument, but as against third parties as well.

Volume 6, Ruling Case Law, p. 595, sec. 6, discussing the question of the validity of a contract entered into by person while in a state of complete intoxication says:

"The law now regards the fact of intoxication and not the cause of it, and regards that fact as affording proof of want of mental capacity. A completely intoxicated person is generally placed on the same footing as persons of unsound minds. One deprived of reason and understanding by reason of drunkenness is for the time as unable to consent to the terms of a contract as are persons who lack mental capacity by reason of insanity or idiocy. A person who at the time of making a contract is completely intoxicated may avoid his contract notwithstanding the fact that his intoxicated condition may have been caused by his voluntary act and not by the contrivance of the other party to the contract,

unless the contract sought to be repudiated is merely
the formal execution of a prior agreement, made when
the party was not intoxicated.  Some courts have even
gone to the extent of saying that a contract by a person
who is completely intoxicated is void.  The word 'void'
seems, however, to have been used as the equivalent of
'voidable.'  At all events such statements, if they are to
be taken literally, are opposed to the weight of authority
which supports the rule that a contract entered into
by a party who is so drunk as not to know what he is
doing is voidable only, and not void, and may be ratified
by such party when he becomes sober.  In fact he will
be deemed to have ratified the contract unless within
a reasonable time after becoming sober he takes steps
to disaffirm it.  A third person cannot therefore invali-
date a contract by an intoxicated person if the real
party affected does not repudiate the same."

If the law is as stated in the paragraph quoted, it is
conclusive of this case, for, assuming Goodwin to have
been drunk at the time, there is no showing that within
a reasonable time after becoming sober he took any
steps to disaffirm his contracts, or by word or act
attempted to repudiate the same prior to the foreclosure
suit.

There is eminent authority for holding that, where
drunkenness is so complete as to suspend all rational
thought, an instrument signed by a party while in such
condition is void, even in the hands of a *bona fide* holder
without notice. (1 Dan. Neg. Inst. 5th ed. sec. 214;
Parsons, Bills & Notes, 151.)

The case of *Green* v. *Gunsten,* 154 Wis. 69, 142 N. W.
261, 46 L. R. A. n. s. 212, relied upon by the court below
as stating the better doctrine, adopts the view that a
note executed by a person when so intoxicated as to
destroy the faculties of his mind is "absolutely void as
between the maker and payee," and by virtue of the
provisions of the statute of that state it is void in the
hands of a *bona fide* holder for value.

Whether a note and mortgage, assuming them to be

void as between the maker and the payee, or even as between the maker and an assignee of the note and mortgage for value, can be defeated by a third party, not in any way in privity with any of the parties to the instrument, upon the ground it is void as against the whole world because of the incapacity of the maker, is a question upon which little, if any, authority directly in point may be found.

Assuming, however, that respondent Lupin may, in defense of the foreclosure suit, set up that the note and mortgage are void because of the mental incapacity of the maker at the time to execute the same, certainly no less degree of proof of such incapacity would be required upon his part than in case of a party attempting to establish his own incapacity.

The case of *Green* v. *Gunsten, supra,* says:

"Intoxication merely to the extent that he cannot give the attention to it that a reasonably prudent man would be able to give is not sufficient. (*Wright* v. *Waller,* 127 Ala. 557, 29 South. 57, 54 L. R. A. 440.) See authorities cited in note as to degree of intoxication that will avoid a contract."

In a note to the case of *Miller* v. *Sterringer,* 25 L. R. A. n. s. 596, which is stated to be supplementary to the note to the case of *Wright* v. *Waller,* 54 L. R. A. 440, the writer of the note says:

"It is stated in the earlier note that, in accordance with the weight of authority, it must be shown that a man was incapable of exercising judgment, of understanding the proposed engagement, and of knowing what he was about when he entered into the contract, or else it would be held binding. The more recent cases assert the same general rule."

In *Burnham* v. *Burnham,* 119 Wis. 509, 97 N. W. 176, 100 Am. St. Rep. 895, the court said:

"A person addicted to the habitual and excessive use of intoxicating liquor is not incompetent to enter into contracts and convey property, unless it appears that

actual intoxication dethroned his reason, or that his understanding was so impaired as to render him mentally unsound when the act was performed."

4. As before pointed out, there is no testimony in this case relative to the condition of Goodwin on the day he gave the note and executed the mortgage. It is entirely a matter of inference based on his appearance some five days later and from the fact that he had the habit of becoming grossly intoxicated at more or less frequent intervals. He was not drunk when he returned to Winnemucca, but bore evidence of having been drinking to excess at some recent date. His signatures to the notes and mortgage, it is claimed, bear evidence of having been written when in an intoxicated condition, and were not in the same free hand as was his signature written when sober. It is contended that, as these signatures have not been brought to this court, all the evidence is not before us. If these signatures might be deemed controlling, there would be great merit in this contention, but it would be quite impossible for a court or jury to say whether the signature was that of a man under the influence of liquor or that of a man in a highly nervous condition following a protracted spree.

5. There is one fact which we think ought to be considered as controlling in the absence of direct evidence upon the question of the mental capacity of Goodwin at the time he executed the note and mortgage. Attached to the mortgage is the certificate of a notary public to the effect that he acknowledged before that officer that he executed the instrument in question. The certificate of the notary is *prima facie* evidence of the due execution of the mortgage. (Rev. Laws, 1043, 1045; *Musgrove* v. *Waitz,* 14 Nev. 77; *Blaisdell* v. *Leach,* 101 Cal. 405, 35 Pac. 1019, 40 Am. St. Rep. 65; 1 R. C. L. p. 260, sec. 18; 1 C. J. 784, 886, 889.)

6. The evidence in this case only amounts to a conjecture or suspicion that Goodwin was not in sufficient possession of his faculties at the time he executed the

mortgage and is insufficient to overcome the *prima facie* evidence of due execution made out by the notary's certificate. (17 Cyc. 754.)

The judgment and order denying a new trial are reversed.